# APPENDIX "2"

LEXSEE 1992 U.S. APP. LEXIS 28631

Analysis
As of: Apr 27, 2007

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its Corporate Capacity, Plaintiff-Appellee, v. HARVEY MYERSON, Defendant-Appellant.**

**No. 92-55351**

**UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT**

*1992 U.S. App. LEXIS 28631*

**October 23, 1992 **, Submitted**

** The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4.

**October 29, 1992, Filed**

**NOTICE:** [*1] THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION AND MAY NOT BE CITED TO OR BY THE COURTS OF THIS CIRCUIT EXCEPT AS PROVIDED BY THE 9TH CIR. R. 36-3.

**SUBSEQUENT HISTORY:** *Reported as Table Case at 978 F.2d 714, 1992 U.S. App. LEXIS 34361.*

**PRIOR HISTORY:** Appeal from the United States District Court for the Central District of California. D.C. No. CV-91-1938-RMT. Robert M. Takasugi, District Judge, Presiding

**DISPOSITION:** AFFIRMED.

**JUDGES:** Before: SNEED, BEEZER, and WIGGINS, Circuit Judges.

**OPINION:**

MEMORANDUM

Harvey Myerson appeals pro se the district court's denial of Myerson's *Fed. R. Civ. P. 60(b)* motion to set aside the default judgment entered against Myerson. We have jurisdiction pursuant to *28 U.S.C. § 1291*, and we affirm.

I

Background

On April 30, 1990, Myerson executed and delivered to The Merchant Bank of California ("Bank") an unsecured promissory note ("Note") in the principal amount of $ 299,750. On June 8, 1990, the Superintendent of Banks of California closed the Bank and appointed the Federal Depository Insurance Corporation ("FDIC") as receiver for the Bank. The FDIC acquired the Note as part of a purchase and assumption transaction arranged by the receiver.

On April 10, 1991, the FDIC filed a complaint against Myerson to collect on the Note in the amount of $ 299,750 [*2] plus accrued interest, attorneys' fees, and costs. Myerson was served personally with the complaint on May 2, 1991. Pursuant to *Fed. R. Civ. P. 12(a)*, Myerson's answer was due May 22, 1991.

Myerson failed to file a timely answer. On July 9, 1991, the FDIC filed a request for entry of default against Myerson for failure to answer and mailed a copy of the request to Myerson. The district court entered Myerson's default on July 10, 1991. The district court granted default judgment against Myerson on August 19, 1991 in the amount of $ 357,671.47. On August 20, 1991, Myerson moved to set aside the default judgment. On February 11, 1992, the district court denied Myerson's motion, finding that Myerson "failed to establish

excusable neglect or a meritorious defense." Myerson timely appealed.

II

Standard of Review

"We review for clear error the district court's factual findings with respect to Rule 60(b) motions to set aside a default judgment." *Price v. Seydel, 961 F.2d 1470, 1473 (9th Cir. 1992).* We will reverse a district court's denial of a motion to set aside "'only upon a clear showing of abuse of discretion.'" *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc., 840 F.2d 685, 690 (9th Cir. 1988)* [*3] (quoting *Meadows v. Dominican Republic, 817 F.2d 517, 521* (9th Cir.), cert. denied, *484 U.S. 479 (1987)).*

A district court's discretion in granting or denying a Rule 60(b) motion is limited by three considerations: (1) Rule 60(b) is a remedial measure, which should be applied liberally, (2) default judgments are generally disfavored, and (3) where a defendant submits a timely request for relief and has a meritorious defense, the court should resolve any doubts in favor of setting aside the default judgment. *Hammer v. Drago (In re Hammer), 940 F.2d 524, 525 (9th Cir. 1991).*

A district court has discretion to deny a motion to set aside a default judgment where (1) defendant's culpable conduct led to the entry of default, (2) defendant has no meritorious defense, or (3) plaintiff would be prejudiced if the judgment is set aside. *Id. at 525-26; Cassidy v Tenorio, 856 F.2d 1412, 1415 (9th Cir. 1988).* "This tripartite test is disjunctive." *In re Hammer, 940 F.2d at 526.* Therefore, a finding that any [*4] one of these three factors is present "is sufficient to justify the district court's refusal to vacate a default judgment." *Cassidy, 856 F.2d at 1415.* The defendant bears the burden of proving that Rule 60(b) relief is justified and that a meritorious defense exists. Id.

III

Merits

A. Excusable Neglect

Myerson contends the district court abused its discretion by denying his motion to set aside the default judgment. Myerson contends his status as a pro se defendant and non-resident attorney, n1 his difficulty in securing counsel, his belief that the district court granted his extension, and his filing of his answer one month after the original extension of time agreed to by the FDIC expired demonstrate excusable neglect. These contentions lack merit.

n1 Myerson is licensed to practice law in New York, where he is of counsel to a law firm. His permanent residence is in Florida.

A defendant's conduct is culpable if he receives notice of the filing of the complaint and fails to answer. [*5] *In re Hammer, 940 F.2d at 526.* Where a defendant fails to answer within 20 days of service, the district court may enter a default judgment. See *Benny v. Pipes, 799 F.2d 489, 492 (9th Cir. 1986),* opinion amended, *807 F.2d 1514,* cert. denied, *484 U.S. 870 (1987).*

Here, Myerson was served personally with a copy of the complaint on May 2, 1991. As a lawyer, Myerson "presumably was well aware of the dangers" of failing to answer timely. See *Direct Mail, 840 F.2d at 690.* At Myerson's request, the FDIC orally agreed to extend the date to answer from May 21, 1991 to June 28, 1991. Although the FDIC prepared and sent Myerson a joint written stipulation regarding the extension, Myerson failed to sign or return it to the FDIC or the district court. n2 Thus, no extension was ever filed with the district court or signed by the judge, as required by the local rules.

n2 The FDIC requested that Myerson execute and return the stipulation so that the FDIC could file it with the district court pursuant to C.D. Cal. Local Rule 3.11, which states that written stipulations affecting the progress of a case shall be filed with the court and will not be effective until signed by a judge.

[*6]

On July 1, 1991, Myerson sought from the FDIC's counsel an additional extension of time to July 29, 1991. The FDIC opposed. On July 12, 1991, after Myerson's time to answer had expired and after the initial 30-day extension had expired, Myerson applied to the district court for an additional 30-day extension. n3

n3 Myerson declared that on July 29, 1991, he mailed the FDIC his answer and counterclaim. According to Myerson, the district court rejected Myerson's July 29, 1991 attempt to file the answer and counterclaim because an entry of default had already been entered. The district court docket sheet does not reflect receipt or rejection of Myerson's answer or counterclaim.

In his motion to set aside the default judgment, Myerson argued that he was not culpable because he had difficulty in securing counsel and made a good faith effort to answer the complaint. Myerson based his "good

faith belief" that the court had granted his request for extension on the fact that he "received no notice that his application [*7] for an extension had been rejected." n4 Given the facts, the district court did not commit clear error in finding that Myerson failed to demonstrate excusable neglect. See *Price, 961 F.2d at 1473.* Therefore, the district court did not abuse its discretion in denying Myerson's motion to set aside the default judgment. See *Cassidy, 856 F.2d at 1415.*

n4 Evidence in the record contradicts Myerson's assertions. Counsel to the FDIC stated in his affidavit that he informed Myerson during a May 29, 1991 telephone conversation that the FDIC would seek entry of default judgment against Myerson if Myerson failed to respond by June 28, 1991. Additionally, the record indicates that on July 9, 1991, the FDIC served by mail a copy of its request for entry of default judgment against Myerson for failure to respond. Myerson applied for an extension on July 12, 1991 and served his answer on July 29, 1991. In his affidavit, Myerson admits that sometime after July 12, 1991 he learned of the FDIC's request for entry of default but believed it was in response to his application for an extension.

[*8]

B. Meritorious Defense

Myerson contends the district court abused its discretion by denying his motion to set aside the default judgment because he presented a meritorious defense. This contention lacks merit.

Mere legal conclusions cannot support a decision to disturb a judgment. *Hammer, 940 F.2d at 526.* Moreover, general allegations without a statement of underlying facts are "insufficient to make out a colorable claim to a meritorious defense." *Cassidy, 856 F.2d at 1416.*

Here, Myerson's affidavit in support of his motion to set aside the default judgment acknowledged the loan but stated that he had entered a separate agreement with the Bank governing the terms of the loan. He further declared that he had complied with the terms of this separate agreement. Nevertheless, he failed to offer evidence of such agreement to the district court to support his contention. n5 In contrast, in support of its motion for entry of default judgment, the FDIC presented a copy of the Note and a copy of the payment schedule, which indicated that Myerson had not made any payment on the loan. Given the facts presented and the effect [*9] of *12 U.S.C. § 1823*(e) and D'Oench, Duhme on Myerson's asserted defense, the district court did not commit clear error in finding that Myerson failed to present a meritorious defense. See *Price, 961 F.2d at 1473.* Therefore, the district court did not abuse its discretion in denying Myerson's motion to vacate the default judgment. See *Cassidy, 856 F.2d at 1415.* n6

n5 Any agreement asserted against the FDIC in its corporate capacity must comply with the terms of *12 U.S.C. § 1823*(e), which provides that no agreement that diminishes or defeats the interest of the FDIC in an asset as security of a loan shall be valid against the FDIC unless it (1) is in writing, (2) was executed by the Bank contemporaneously with the acquisition of the asset, (3) was approved by the Bank's board of directors, as evidenced in the minutes, and (4) has been continuously an official record of the Bank. *12 U.S.C. § 1823*(e). Any agreement asserted against the FDIC must comply strictly with section 1823(e). *Langley v. FDIC, 484 U.S. 86, 95 (1987).* Additionally, any such agreement must comply with the common law rule stating that agreements that are not in a failed bank's records may not be asserted against the FDIC. *D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 460-61 (1942).* Here, Myerson failed to allege or offer evidence that any of these requirements were met.

[*10]

n6 Myerson also contends the district court erred by failing to address the lack of prejudice the FDIC would suffer if the district court granted the Rule 60(b) motion. Because we find that two of the three factors of the Cassidy were present, we need not address the issue of prejudice to the FDIC. See *Cassidy, 856 F.2d at 1415* (only one of the three factors must be present for the district court to correctly exercise its discretion to deny Rule 60(b) relief).

**AFFIRMED.**

# APPENDIX "3"

LEXSEE 2000 U.S. DIST. LEXIS 17878

Analysis
As of: Apr 27, 2007

**BUTERA, BEAUSANG, COHEN & BRENNAN, P.C. v. LAUREEN M. RYAN, TRUSTEE, CHAPTER 11 TRUSTEE OF THE ESTATE OF RAYMARK INDUSTRIES, INC.**

**Civil Action No. 00-2509**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

***2000 U.S. Dist. LEXIS 17878***

**December 11, 2000, Decided**
**December 11, 2000, Filed**

**DISPOSITION:** [*1] Motion GRANTED, and instant action DISMISSED pursuant to first-filed rule. Plaintiff Butera, Beausang, Cohen & Brennan's Motion for Summary Judgment or for Partial Summary Judgment and/or Declaratory Relief DENIED in its entirety.

**COUNSEL:** For BUTERA, BEAUSANG, COHEN & BRENNAN, PLAINTIFF: ALAN A. TURNER, TURNER AND MC DONALD, PHILA, PA USA.

For LAUREEN M. RYAN, TRUSTEE, CHAPTER 11 TRUSTEE OF THE ESTATE OF RAYMARK INDUSTRIES, INC., DEFENDANT: KRISTIN B. MEYER, KRISTIN B. MAYHEW, JAMES C. GRAHAM, PEPE & HAZARD, LLP., HARTFORD, CT USA.

**JUDGES:** John R. Padova, J.

**OPINION BY:** John R. Padova

**OPINION:**

**MEMORANDUM**

**Padova, J.**

December 11, 2000

This matter arises on the Defendant Laureen M. Ryan's Motion for Summary Judgment and Plaintiff Butera, Beausang, Cohen & Brennan, P.C.'s Motion for Summary Judgment or for Partial Summary Judgment and/or Declaratory Relief. The parties have filed numerous responses, replies, affidavits, and supporting memoranda. In addition, prior to the filing of these motions, oral argument was held on Defendant's Motion for Stay of Proceedings, at which the basic issues underlying these motions were addressed. The motions are fully briefed and ripe for consideration. For the [*2] reasons that follow, the Court grants Defendant's Motion and dismisses this action pursuant to the first-filed rule. n1 Accordingly, the Court denies Plantiff's Motion in its entirety.

n1 Though Defendant moves for grant of summary judgment pursuant to the first-filed rule, the appropriate action by a court under the rule is to dismiss, transfer or stay the proceedings. *Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994)* (citing *Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991))*. The Court dismisses the instant action.

**I. Background**

The instant case relates to another case formerly before this Court, *Raymark Industries, Inc. v. Butera, Beausang, Cohen & Brennan, 1997 U.S. Dist. LEXIS 19070*, Civil Action No. 97-0034. In that action, Raymark Industries, Inc. ("Raymark") sought the return of a

$ 1 million non-refundable retainer paid to Michael Beausang of the law firm Butera, Beausang, Cohen & Brennan ("Butera"). By Order dated December 1, 1997, this Court granted [*3] summary judgment in favor of Butera, and held that Butera was entitled to retain its $ 1 million fee. *Raymark Industries, Inc. v. Butera, Beausang, Cohen & Brennan, 1997 U.S. Dist. LEXIS 19070, No. Civ. A. 97-0034, 1997 WL 746125*, at *1 (E.D. Pa. Dec. 1, 1997), aff'd, *Ryan v. Butera, Beausang, Cohen & Brennan, 193 F.3d 210 (3rd Cir. 1999).*

On or about March 18, 1998, Raymark filed a voluntary petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Utah; the case was subsequently transferred to the United States Bankruptcy Court for the District of Connecticut. (Def.'s Mem. at 3). On October 7, 1998, the bankruptcy court ordered appointment of a Chapter 11 trustee ("Trustee") in the bankruptcy cases of Raymark Industries and its corporate parent, Raymark Corporation. (Id.) On or about March 16, 2000, the Trustee commenced an adversary proceeding against Butera in the United States Bankruptcy Court for the District of Connecticut. (Id.) In the suit, the Trustee alleges that Raymark paid a pre-petition retainer to Butera with either actual intent to hinder, delay or defraud creditors, or without [*4] receiving reasonably equivalent value at a time when Raymark was insolvent, all in violation of federal bankruptcy law. (Def.'s Mem. at 4). The Trustee contends that payment of the retainer to Butera was part of an overall scheme by Raymark and others to hinder, delay and defraud creditors. (Id.)

Butera filed the instant action on May 16, 2000. n2 Butera asks for injunctive, equitable and monetary relief; specifically, it asks that the Court enjoin the Trustee from further litigation of the adversary proceeding in the Connecticut bankruptcy court, and enforce the determinations and judgments by this Court in its December 1997 opinion. n3 Butera also seeks damages in the form of reimbursement of reasonable costs and counsel fees. In the alternative, Butera seeks a declaratory judgment, pursuant to *Rule 57 of the Federal Rules of Civil Procedure*, with respect to the res judicata effect of certain aspects of the 1997 ruling.

n2 The procedural posture for this case is somewhat unusual. Rather than filing a motion for a writ to enforce the judgment pursuant to the 1997 action under *Rule 69 of the Federal Rules of Civil Procedure*, Plaintiff instead filed the instant action, and included a request for attorneys' fees and litigation costs.

[*5]

n3 Plaintiff seeks the same relief with respect to the enforcement of determinations by Bankruptcy Judge Thomas Twardowski of the United States Bankruptcy Court for the Eastern District of Pennsylvania, in his August 9, 1996 Order in the case of In re: Raymark Industries, Inc., Case No. 89-20233T.

**II. Legal Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).* A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

**III. Discussion**

At the threshold, Defendant asserts that this action should be dismissed pursuant to the first-filed rule. Under [*6] the first-filed rule, in cases of federal concurrent jurisdiction and absent exceptional circumstances, the court which first has possession of the subject must decide it. *Premier Design, Ltd. v. Western Money Sys., 1993 U.S. Dist. LEXIS 13142, Civ. A. No. 93-1850, 1993 WL 313506*, at *1 (E.D. Pa. July 30, 1993). The rule allows a district court to transfer, stay or dismiss an action when a similar complaint has already been filed in another federal court. *Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994)* (citing *Alltrade, Inc. v. Uniweld Products, Inc., 946 F.2d 622, 623 (9th Cir. 1991)).* In deciding whether to apply the rule, courts look to three threshold factors: the chronology of the two actions, the similarity of the parties, and the similarity of the issues. Id. One of the principle goals of the first-filed rule is to avoid duplicative litigation. *Colorado River Water Conserv. Dist. v. U.S., 424 U.S. 800, 817, 47 L. Ed. 2d 483, 96 S. Ct. 1236 (1976).*

The Court concludes that the first-filed rule applies to bar this Court's jurisdiction over the instant action. n4 Here, the three factors are met: the Connecticut action was [*7] filed on March 18, 2000, some two months prior to the filing of the instant action on May 16, 2000. The parties involved in the actions are identical, and the issues in the instant case involve res judicata inquiries with respect to issues as they affect the first action. Furthermore, applying the first-filed rule in this case would

avoid duplicative litigation in Connecticut and the Eastern District of Pennsylvania. The Court therefore agrees with Defendant that the first-filed rule applies.

> n4 Defendant also contends that the suit is barred under the Barton Doctrine, which precludes a party from bringing suit against a court-appointed bankruptcy trustee for acts done in her administrative capacity, without first obtaining leave from the appointing court. *Barton v. Barbour, 104 U.S. 126, 129, 26 L. Ed. 672 (1881); Western N.Y. & P.R. Co. v. Penn. Ref. Co., 137 F. 343, 360 (3d Cir. 1905); In re Linton, 136 F.3d 544, 546 (7th Cir. 1998)* (extending rule for court-appointed receivers to cover court-appointed bankruptcy trustees). Because the Court determines that the suit is barred under the first-filed rule, it need not consider this theory for judgment in favor of the Defendant. Likewise, and for the same reason, the Court need not examine Plaintiff's supposed malicious prosecution claim.

[*8]

Plaintiff, however, disputes that the Connecticut action was the first-filed action. Rather, it contends that because the instant action "arises out of the Court's decision and judgment of December 1, 1997, and is the functional equivalent of a Rule 69 motion in the original case of Raymark v. Butera, this action would be considered the 'first filed' for purposes of applying the First Filed rule." (Pl.'s Resp. in Opp. to Trustee's Statement of Mat. Facts Not in Dispute P9). However, the practical similarity between this action and a Rule 69 motion does not change the fact that Plaintiff chose to file a new action, and not a Rule 69 motion, and therefore subjected itself to potential jurisdictional defenses that otherwise might not have been available to Defendant. n5 In this situation, the Court disagrees with Plaintiff's characterization, and concludes that the Connecticut action is the first-filed action for purposes of the first-filed rule.

> n5 By this, the Court expresses no opinion as to the validity of the issue preclusion arguments raised by Plaintiff, or as to the possibility that a res judicata determination with respect to certain prior findings might be dispositive in the Connecticut proceeding.

[*9]

Neither is this a case in which the Court would be justified in retaining jurisdiction notwithstanding the first-filed rule. District courts do possess the discretion to retain jurisdiction given appropriate "compelling circumstances" justifying departure from the rule. *EEOC v. University of Penn., 850 F.2d 969, 971 (3d Cir. 1988).* In particular, the court should not apply the first-filed rule if the facts of the case show forum-shopping, bad faith, or inequitable conduct. *Id. at 972.* Here, however, the Court can discern no such "compelling circumstances" that would warrant the Court to retain jurisdiction and refrain from applying the first-filed rule. Concluding that the first-filed rule applies, the Court therefore lacks jurisdiction over this case.

Even if this Court, however, were to retain jurisdiction over this case notwithstanding the first-filed rule, exercise of its authority under the All Writs Act and its inherent power to enforce its order to provide the relief sought by Butera would be inappropriate. n6 Butera asks this Court to use its writ power to support res judicata principles that would bar, in whole or in part, the Connecticut [*10] adversary proceeding. Ordinarily, the doctrines of collateral estoppel and res judicata provide adequate assurance that one court's resolution of a controversy will be respected by other courts. *DeNardo v. Murphy, 781 F.2d 1345, 1348 (9th Cir. 1986).* Nevertheless, under the All Writs Act, a federal court may enjoin parties before it from attempting to relitigate decided issues and to prevent collateral attack of its judgments. See In re: *March, 988 F.2d 498, 500 (4th Cir. 1993); DeNardo, 781 F.2d at 1348; Wood v. Santa Barbara Chamber of Commerce, Inc., 705 F.2d 1515, 1523-24 (9th Cir. 1983).* Courts may grant injunctions "where such action is necessary to prevent harassment . . . through the repeated filing of baseless complaints." *Adams v. American Bar Association et al., 400 F. Supp. 219, 227 (E.D. Pa. 1975);* see also *Shafii v. British Airways, PLC, 83 F.3d 566, 571 (2d Cir. 1996)* (noting that injunction appropriate where a litigant engages in filing of repetitive and frivolous lawsuits). Issuance of such an injunction is proper when it is "apparent that the litigation is baseless. [*11] " *Adams, 400 F. Supp. at 228; Calesnick v. Redevelopment Auth. of Phil., 696 F. Supp. 1053, 1055 (E.D. Pa. 1988).* This power extends to injunctions restricting filings of meritless pleadings where the pleadings raise issues identical or similar to those already adjudicated. *In re Oliver, 682 F.2d 443, 445 (3d Cir. 1982).* However, such injunctions are extreme remedies that should be narrowly tailored and sparingly used. Id.; *Abdul-Akbar v. Watson, 901 F.2d 329, 332 (3d Cir. 1990);* In the *Matter of Packer Ave. Assoc., 884 F.2d 745, 746 (3d Cir. 1989)* (citation omitted).

> n6 The same is true with respect to Defendant's request for declaratory judgment. Declaratory judgment actions are governed by *28 U.S.C. § 2201* and *Federal Rule of Civil Procedure 57.*

Section 2201 provides, in relevant part: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *28 U.S.C. § 2201*(a). The Advisory Committee Notes from the 1937 adoption of *Federal Rule of Civil Procedure 57* provide that "[a] declaratory judgment is appropriate when it will 'terminate the controversy' giving rise to the proceeding" and that "when declaratory relief will not be effective in settling the controversy, the court may decline to grant it." *Fed. R. Civ. P. 57*, cmt.

The decision whether or not to entertain a declaratory judgment request lies in the sound discretion of the district court. *Wilton v. Seven Falls Co., 515 U.S. 277, 282, 132 L. Ed. 2d 214, 115 S. Ct. 2137 (1995).* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id. at 288.* The Court's discretion to decline to hear a declaratory judgment action arises at the outset because "if a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." Id.

Here, the declaratory judgment would not serve any function not otherwise available by raising the issue preclusion arguments in the Connecticut bankruptcy court. Furthermore, such a declaratory judgment might not terminate the Connecticut action. Therefore, declaratory judgment in this situation, like exercise of the writ authority, would not be appropriate.

[*12]

The Court can discern no basis to justify this Court's use of its writ authority to grant the remedy Butera requests. This case does not involve multiple filings of frivolous actions, nor would Plaintiff be left without adequate remedy in the absence of such a writ. To the extent that res judicata principles might apply, Butera can raise those issues before the Connecticut court. The extreme remedy of intervention by this Court into the proceeding of another federal court is not required. Therefore, even if this Court retained jurisdiction despite the first-filed rule, it would decline to exercise its writ authority in this case.

The Court recognizes that Plaintiff raises serious issue preclusion arguments, particularly in view of this Court's extensive analysis of the retainer fee in its 1997 opinion. Nevertheless, the Court offers no opinion here with respect to the success of those preclusion arguments, or to the extent to which the determinations of this Court in its 1997 opinion may be dispositive to the Connecticut proceeding. The Court sees little reason to delve into these issues when they may be addressed properly and fully before the Connecticut bankruptcy court. In the [*13] interests of avoiding duplicative litigation under the first-filed rule, the Court concludes that it lacks jurisdiction over this case, and further concludes that even if it were to retain jurisdiction, granting the relief sought by the Plaintiff would not be appropriate under these circumstances. The Court therefore grants Defendant's Motion and dismisses this action, and denies Plaintiff's Motion in its entirety.

An appropriate Order follows.

**ORDER** ENTERED: 12-12-00

**AND NOW,** this 11th day of December, 2000, upon consideration of Defendant Laureen M. Ryan's Motion for Summary Judgment (Docket No. 14), and all responses thereto, **IT IS HEREBY ORDERED** that said Motion is **GRANTED**, and the instant action is **DISMISSED** pursuant to the first-filed rule. It is further **ORDERED** that:

1. Plaintiff Butera, Beausang, Cohen & Brennan's Motion for Summary Judgment or for Partial Summary Judgment and/or Declaratory Relief (Docket No. 15) is **DENIED** in its entirety.

2. The Clerk shall close this case for statistical purposes.

BY THE COURT:

John R. Padova, J.