# APPENDIX "6"

**Response of the Hong Kong Special Administrative Region of the People's Republic of China to the Questionnaire on the Hague Convention on the Service Abroad of Judicial or Extrajudicial Documents <u>in Civil or Commercial Matters (the "Convention")</u>**

The Convention has been applicable to the Hong Kong Special Administrative Region of the People's Republic of China ("Hong Kong") since 1970. Unless otherwise stated, the information given below relates only to Hong Kong.

## <u>Section I – QUESTIONS ADDRESSED TO NON-PARTY STATES</u>

Not relevant to Hong Kong.

## <u>SECTION II - ADMINISTRATIVE INFORMATION AND UPDATES</u>

### 3. Central Authority

3.1 <u>Update of Administrative Information</u>

In respect of Hong Kong, the Chief Secretary for Administration has been designated as the other authority under Article 18 of the Convention. The contact information in the Hague Conference website should be updated to read as follows:-

Chief Secretary of Administration,
Hong Kong Special Administrative Region Government,
Room 140 East Wing, Central Government Offices,
Lower Albert Road,
Hong Kong
Tel: (852) 2810 3969/(852) 2810 2783
Fax: (852) 2842 8897

3.2 Languages used by the authorities' staff

The languages used are Chinese and English.

3.3 Do you have at your disposal statistical information relating to the number and source of requests directed at your State's Central Authority? If so, could you provide it?

In respect of Hong Kong, most of the requests come from the USA, France and Germany. The number of requests received from 2001 to 2003 (up to 23 September 2003) are as follow:-

| Year | No. of Requests |
|---|---|
| 2001 | 360 |
| 2002 | 360 |
| 2003 (up to 23.9.2003) | 239 |

## 4 Case Law and Reference Works

4.1 Significant court rulings issued pursuant to the Convention since 1992

There are two fairly recent cases which touch on the question of postal service and Article 10 of the Convention. In the case of *Hui Suet Ying and another v Sharp Corporation and another*[1] (HCPI 1269/1997) dated 15 February, 2000, the Court of First Instance held that since Japan has not declared its opposition to postal service in accordance with Article 21 of the Convention, a writ served by post from Hong Kong to Japan constituted valid service by virtue of Article 10 of the Convention. This is despite expert evidence on Japanese law to the effect that postal service is not a recognised way of service in Japan.

The second case involves the service of a writ to Switzerland from Hong Kong by airmail. In this case (*Continental Mark Limited v*

[1] Full text of the judgment is available at http://www.hklii.org.hk/cgi-hklii/disp.pl/hk/eng%5fjud/HKCFI/2000/20000215%5fHCPI001269%5f1997.html?query=%7e+hui+suet+ying

*Verkehrs-Club de Schweiz* – judgment dated 31 October 2001[2]), the service of a writ by airmail was held to be invalid. The judge made three observations. Firstly, in Switzerland, service of judicial documents between contracting States is governed by the Convention. Secondly, the Convention is applicable as between Hong Kong and Switzerland. Thirdly, Switzerland has declared, pursuant to Article 21 of the Convention, that it is not possible, under Swiss law, for service of Writs to be lawfully served by the postal channels.

4.2 List of bibliographical references of works and articles published in Hong Kong since 1992 in connection with the Convention.

We are not aware of any.

**5 Handbook**

5.1 Would you be in favour of the proposal to maintain a website with updated version of the Handbook in view of the resources implications? If so, could you specify information that you would consider useful to have on the website?

It would be useful if the Hague Conference may maintain a website containing the updated version of the Handbook, practical and useful information regarding the Convention, as well as the practices and contacts in individual Contracting Parties. To be useful, the website needs to be updated regularly. Hong Kong supports such an initiative.

The website should contain the details of the Central and other Authorities of each Contracting Party (including the name and contact details of a person who may serve as a contact point), the relevant declarations that have been made by Contracting Parties pursuant to Article 21 of the Convention, and citations of the

[2] Full text of the judgment is available at http://www.hklii.org.hk/cgi-hklii/disp.pl/hk/eng%5fjud/HKCA/2002/20020523%5fCACV003628%5f2001.html?query=%7e+verkehr+and+schweiz

relevant domestic legislation governing service under the Convention for each Contracting Party. Hyperlinks to the relevant websites should be included wherever possible.

5.2 Does the structure (headings, sub-headings) of the Handbook's provisional version seem satisfactory to you? Do you have any suggestions?

The structure of the Handbook's provisional version is satisfactory. We do not have any suggestion.

5.3 Would you wish to see in the Handbook other items that are not contained in the provisional version? If so, which?

None that we can think of at the moment.

5.4 How would you contemplate updating of the Handbook, both in terms of frequency and in terms of resources?

Annual updating of the handbook should be sufficient. The resources may be obtained by seeking out sponsorship or voluntary contribution from parties to the Convention.

5.5 Could you provide a list of useful links to Internet sites containing information concerning application of the Convention in your State, or more generally regarding service in your State?

The relevant websites in respect of Hong Kong are:

(1) http://www.justice.gov.hk/Home.htm - free internet access (with search functions) to Hong Kong's legislation, including the Rules of the High Court which govern the procedure for service out of jurisdiction and service from a place outside Hong Kong.

(2) http://www.info.gov.hk/jud/ - website of the Hong Kong Judiciary

(3) http://www.info.gov.hk/admwing/flash.htm – website of the

Hong Kong authority designated under Article 18(1) of the Convention.

(4) http://www.hklii.org.hk/ - free internet access to judgments and legal information in Hong Kong

## SECTION III – INFORMATION RELATING TO APPLICATION OF THE CONVENTION

### 6 Scope of the Convention

6.1 Have you noted a change since 1992 in interpretation of the Convention's scope?

No. As far as we are aware, the scope of the Convention in relation to its application to Hong Kong has not been subject to any court ruling in Hong Kong.

6.2 Has the scope of the phrase "in civil or commercial matters" given rise to difficulties? Have the courts interpreted it autonomously?

No difficulty has been experienced in interpretation.

6.3 Have you noticed a change since 1992 regarding the interpretation that the 1965 Convention is not mandatory in that it is up to the *lex fori* to determine whether a document should be transmitted abroad?

As far as we are aware, the mandatory nature of the Convention has never been examined in detail in the Hong Kong court.

6.4 Have you noted a change since 1992 regarding the Convention's exclusive character?

As far as we are aware, the exclusive character of the Convention has never been examined in detail in the Hong Kong

court.

6.5 Does the terminology used in the Convention (e.g. "writ of summons") give rise to interpretation difficulties in connection with changes in your domestic law?

None that we are aware of.

## 7 Forwarding Authority

7.1 Which are in your country the Authorities or persons competent to forward a request for service to the Central Authority under Article 3?

The authority in the Hong Kong SAR competent to forward a request for service to a foreign Central Authority under Article 3 is the Chief Secretary for Administration, who has been designated as the other authority in Hong Kong to forward a request for service under Article 3.

7.2 Do you consider that cooperation between Central Authorities to determine the competence of the forwarding authority should remain subject to "special circumstances", or on the contrary, that it should be encouraged in broader circumstances?

We prefer a liberal approach and consider that cooperation between Central Authorities to determine the competence should not be limited to a few "specific circumstances".

## 8 Methods for service used by the Central Authority

8.1 Could you summarize the methods that are or may be used by the Authority in your country for:

(A) formal service within the meaning of Article 5(1)(a);

(B) informal delivery within the meaning of Article 5(2); and

(C) special request by the applicant, within the meaning of Article 5(1)(b)?

8.1(A) All services are effected by Chief Bailiff of the Court, unless specifically asked otherwise, by formal service in one of the following ways:

(a) by personal service on addressee if addressee is a person;

(b) by leaving at the registered office address if addressee is a limited company or corporation; or

(c) by personal service on an officer of the company or corporation if addressee is a limited company or corporation and the registered office is no longer occupied or used by it.

8.1(B) The informal delivery is also carried out by the Chief Bailiff.

8.1(C) Most of the special requests are to serve the document by post, which is also done by the Chief Bailiff.

8.2 In connection with these descriptions, please specify the extent and scope of requirements for translation, if any? Please specify whether your State has entered into particular agreements with other Contracting States in these respects, within the meaning of Article 20(b).

According to Order 69, Rule 3(1) of the Rules of the High Court, if the request is in a language other than either or both of Hong Kong's official language (which are Chinese and English), it shall be accompanied by a translation of the request in either of the two languages, 2 copies of the process and, unless the court or tribunal of a country or place outside Hong Kong certifies that the person to be served understands the language of the process, 2 copies of the translation of the process.

Hong Kong has not entered into agreement with other Contracting States in these respects, within the meaning of Article 20(b).

8.3 Have administrative or other forms of action, such as the setting of periods to process applications or the use of outsourcing to perform the Central Authority's duties, been taken in order to expedite the service procedures? If so, which, and have they proved effective?

We have not taken such administrative or other action. However, the average time taken to process a request for service is about two months from the date of receipt of the request. Upon special request the bailiff is prepared to give priority if good reasons are given and subject to the Registrar's approval.

8.4 Please specify also whether charges are incurred for one method for service or another and, if applicable, the nature of such costs (flat-rate or proportional costs), and the method of their reimbursement.

Charges are incurred and absorbed by the Hong Kong Judiciary. The Judiciary does not seek reimbursement because it is an international commitment.

## 9 Translation Requirement

9.1 Does a general declaration by a State that its authorities will perform formal service only if the document to be served is drafted in or translated into its official language or languages make judicial assistance substantially more cumbersome in practice?

We note that such a requirement is not inconsistent with Article 5(3) as that Article envisages that a Central Authority may impose language/translation requirement. This may be an onerous requirement if the document is lengthy and complex. We consider that the relevant provisions in the Hong Kong legislation (see the answer to 8.2) is an appropriate compromise between convenience and the interests of justice.

9.2 Do you consider that it might be appropriate to adopt a

recommendation that the Central Authority of the State addressed should not call for a translation if it has reasons to believe that a document drafted in a language of the requesting state is understandable to the addressee?

Yes. The current Hong Kong practice is that service could be effected on the addressee if he accepts the documents (without translation) voluntarily or if the requesting State certifies that the person to be served understands the language of the process. Therefore, Hong Kong's existing practice is consistent with the proposed recommendation.

9.3 Could you state your suggestions regarding the implementation of such a recommendation in connection with mutual assistance between authorities?

Our suggestion is that a rule similar to Order 69 of the Rules of the High Court of Hong Kong may be adopted as a recommendation. Under that rule, no translation is required if the court or tribunal of the requesting State certifies that the person to be served understands the language of the process.

9.4 Do you believe that the requirement of full translation of the document to be served is always appropriate, and could it not be restricted to the document's summary?

Full translation may not be necessary. It would be sufficient as long as a person to be served understands the process and his right to defend.

9.5 Do such translations need to be legalized or to bear an *apostille*?

No. Such a requirement will not be consistent with the spirit of Article 3(1) of the Convention. Please also refer to the reasons stated in the answer to 9.4.

## 10 Timing

10.1 What is the average time required for performance of requests for services?

For performance of incoming requests, the time required is around two months from the date of receipt of the request. For outgoing requests, the time required varies from State to State.

10.2 Are there substantial differences between States addressed?

Yes. The time required ranges from around three months to around 6 months or more.

10.3 How could procedures for mutual assistance be improved?

We suggest that the Central Authority of the requested State send an interim reply to that of the requesting State, say, three months after the date of receipt of the request, advising it of the status of service, the difficulties encountered and/or the expected time required to complete the service.

## 11 Alternative Transmission Channels

11.1 Are consular and diplomatic channels frequently used in practice?

Hong Kong does not use consular or diplomatic channels to serve requests abroad except for service to Non-Convention States but we do occasionally receive requests for service from Contracting States through these alternative channels.

11.2 Have the interpretation and application of this provision given rise to difficulties?

No, we have not encountered any difficulty in that respect.

11.3

(a) States are invited to specify whether the transmission method described under Article 10(b) (service through judicial officers, officials or other competent persons) is used frequently.

No statistics have been kept on the number of requests received directly from judicial officers of a foreign court. The practice of our court is that whenever such requests are received, they will be forwarded to the competent authority for Hong Kong (Chief Secretary for Administration) for processing. Direct service through Government officials are not available in Hong Kong. However, a private agent (usually a firm of solicitors) may be appointed directly to effect service. Such service can be effected directly without going through the Government or the judiciary. Therefore we do not have the statistics on such service.

(b) & (d) transmission by huissiers

Not applicable to Hong Kong – bailiff in Hong Kong only serve process on instruction from the court.

(c) Information relating to the costs of forwarding and reimbursement of the costs

The Hong Kong Judiciary does not seek reimbursement of the costs. The charges made by solicitors appointed to serve process by foreign judicial officers, officials or other competent persons are not regulated by the Government. They vary depending on the services required and time taken to execute the request.

(e) Are your country's lawyers or solicitors authorized to perform service from abroad?

Nothing in the law of Hong Kong prevents solicitors in Hong Kong from being appointed as agent to serve foreign process.

11.4 Have the interpretation and application of the provision relating to interested persons (Article 10(c)) given rise to difficulties?

No, we have not encountered any difficulty in this regard.

## 12 Judicial and extrajudical documents

12.1 Does your country's legislation make a distinction between judicial documents producing procedural effects and those that do not? If so, do the authorities in your country apply the Convention to these two classes of judicial documents or only to those judicial documents producing procedural effects?

We do not make a distinction between judicial documents providing procedural effect and those that do not and we apply the Convention to both.

12.2 Could you provide us with the statistics at your disposal, if any, relating to the volume of extrajudicial documents forwarded under the Convention?

We do not keep statistics on this.

## 13 Date of Service

13.1 What is your view of the dual-dating system?

Under the law in Hong Kong, time starts to run when service is completed. We are not keen on the dual dating system. In addition to the arguments against the dual-dating system discussed in the last paragraph of section II,1,E,f of the General Comments prepared by the Permanent Bureau, we are also concerned about the need to ascertain the foreign law with regard to the determination of the date of service. This would involve the introduction of expert evidence on a simple matter such as the date of service. The cost and time involved may not be justified. This may also unduly prejudice the

interests of the plaintiff.

13.2 Does your country's domestic law provide for a system to determine, in the event of transmission abroad, the date of service for the applicant?

Hong Kong court specifies in the order when time begins to run in granting leave to serve out of jurisdiction which forms part of the papers to be served.

## 14 *Exequatur*

14.1 In your country, would it be possible to deny enforcement of a foreign judgment on ground of breach of public policy based on the service procedure applied, even though that service has been performed by the methods provided for under the Convention? If so, in what circumstances?

Under section 6(1)(a)(iii) of the Foreign Judgments (Reciprocal Enforcement) Ordinance, Chapter 319 of the Laws of Hong Kong, the court shall refuse to register a judgment for enforcement if, *inter alia*, it is satisfied that the defendant did not (notwithstanding that process may have been duly served on him in accordance with the law of the country of the original court) receive notice of those proceedings in sufficient time to enable him to defend the proceedings and did not appear. Therefore, service may have been performed in compliance with the Convention, but the court is still entitled to take everything into consideration to decide whether or not the defendant has sufficient time to enable him to defend the proceedings if he did not appear in the proceedings in the original court.

Furthermore, section 6(1)(a)(v) of the same Ordinance provides for a mandatory ground of refusal to enforce a foreign judgment based on public policy. Our position on translation is clear as represented by Order 69 rule 3(1) of the Rules of the High Court. But if the lack of translation of the relevant documents is considered

to have fundamentally affected the rights of the defendant to have a fair trial, the resulting judgment may not be enforced in Hong Kong by virtue of this section.

**15 Exclusion of Application of the Convention between the parties**

15.1 Have rulings been issued in your country permitting the parties to exclude application of the Convention between themselves by agreement or contract?

We are not aware of any such ruling in Hong Kong. In Hong Kong, the implementation of the Convention is partly achieved by legislation (enactment of Rules of Court). It is generally against public policy under the law of Hong Kong for parties to contract out of legislative provisions.

**16 Fax and electronic mail**

16.1 Form of request

(a) Would the Central Authority of your country, as State addressed, be willing to accept request forwarded to it by fax or e-mail?

No, it is not valid. For service of the original process the copy for service has to be a sealed copy (Order 10 rule 1(6) of the Rules of the High Court).

(b) Are e-mail and fax used in your country, as requesting State, to forward requests for service?

No.

16.2 Form of service

(a) In your State, may service from abroad be performed by

e-mail or fax?

No, it cannot be done by e-mail or fax as Order 69 rules 2 and 3 of the Rules of the High Court clearly specify the methods of service either by leaving with the person or inserting in the appropriate letter box.

(b) If your State allows postal channels for service from abroad, might the use of e-mail instead of postal channels be contemplated? If so, subject to what requirements.

In the case of postal service from abroad, no control is exercised by the Hong Kong court with regard to the form and format of service. There is no objection from Hong Kong if the law of the original court permits the service of process to a foreign country by electronic means such as e-mail.

(c) As requesting State, does your domestic law accept service performed by e-mail or fax in the State addressed?

No, we do not accept service performed by e-mail or fax.

16.3 Form of the certificate

(a) Does the Central Authority or any other competent authority in your country use or seek to use e-mail or fax for the sending of the certificate of due performance of service? If so, in what circumstances?

(b) As requesting State, would you accept receipt by e-mail or fax of a certificate of service abroad? If so, in what circumstances?

Answers to (a) and (b) are as follows:

No. The Authority for the Convention in Hong Kong and the Court do not accept e-mail or fax of the certificate as sufficient evidence. For this reason we do not seek to do so in the reciprocal situation.

16.4 Could you provide us with the statutes or case-law in your country, if any, permitting or ruling out the use of e-mail or fax in service procedures, whether domestic or international?

The Rules of the High Court governing service of originating process and service of foreign process are specified in Order 10 and Order 69 of the Rules of the High Court, Chapter 4A of the Laws of Hong Kong. The current rules do not contemplate the service of process, either local or foreign, by electronic means unless this is permissible pursuant to the terms of a contract or otherwise agreed by the parties. The statute of Hong Kong is available on line free of charge at http://www.justice.gov.hk/Home.htm. (Please also refer to Answer to Question 16.6.)

16.5 Is the use of e-mail or fax in service procedures subject to specific security requirements?

Not applicable since service by e-mail or fax is not allowed in Hong Kong. If the parties to a contract agrees to accept service by electronic means, the security requirements, if any, should also be specified in the contract.

16.6 Is the clause for service whereby parties to contract agree in advance to receipt of service of any document by electronc channels used in practice? Does your domestic law recognise it as being valid?

Order 10, Rule 3 of the Rules of the High Court expressly provides that parties to a contract may specify the manner in which service may be performed. [This method of service is sometimes used in practice. Under the common law, the parties may other wise agree to a special mode of service in place of that provided by the court rules.

## 17 Model forms

17.1 Do you consider that the model forms ought to be revised? If so, how?

For the time being I do not see any problem necessitating revision apart from those contemplated by the paper (Preliminary Document No. 1).

17.2 In particular, do you consider that information for the addressee, such as the amount due, the place and period for payment, the manner in which a defence may be exercised and the consequences for the defendant of failure to enter a defence, ought to be added to them?

It will be most helpful if such information is added making it in line with our domestic law.

17.3 Amendment of the Request Form, to provide for a specific box for a description and declaration of the capacity and competence of the forwarding authority, might be contemplated. Such a solution would allow ascertainment that the request has indeed been forwarded by an authority or officer competent under the requesting State's law. Would you be in favour of such a change?

Yes, we support the suggestion.

17.4 Does the adoption of a new Form by way of Recommendation, as in 1980, seem more appropriate to you?

Yes. If this can be done in 1980, we see no reason why the same approach should not be adopted now.

17.5 Would an electronic version of the model forms be useful?

Yes.

## 18 Reservations and reciprocity

18.1 Do Contracting States not opposing direct service through postal channels in accordance with Article 10 assert reciprocity against Contracting States having stated their opposition to this transmission method, or do they accept direct service postal channels from such States?

Hong Kong, which does not oppose direct service through postal channels, does not assert reciprocity against Contracting States having stated their opposition to this transmission method. We are not aware of such reciprocity being asserted.

18.2 Do Contracting States not opposing transmission through consular channels within the meaning of Article 8 assert reciprocity against Contracting States having stated their opposition to this transmission method?

We are not aware of such reciprocity being asserted.

## 19 Article 25: Bilateral and Multilateral agreements

19.1 Could you provide us with a list of the bilateral or multilateral agreements binding your country and other Contracting States with respect to international service?

None except the Convention. However, we do have an internal arrangement on service of process with our neighbouring Guangdong Province in the Mainland.

19.2 – 19.4 Questions for State Parties also to (1) the Inter-American Convention; (2) EU Rgulation No. 1348/2000; and (3) AALCO.

Not applicable to Hong Kong.

#19198v1