# APPENDIX "7"

LEXSEE 1997 U.S. DIST. LEXIS 9204

Analysis
As of: Apr 27, 2007

**HOWARD FRIEDMAN, Plaintiff, v. ISRAEL LABOUR PARTY, HAIM RAMON, DAVID LIBAI, MOSHE SHAHAL, TOVA ELINSON, and JOHN DOES I-XV, jointly and severally, Defendants.**

**CIVIL ACTION NO. 96-CV-4702**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

***1997 U.S. Dist. LEXIS 9204***

**June 30, 1997, Decided**
**July 2, 1997, FILED**

**DISPOSITION:** [*1] Plaintiff for entry of default judgment and hearing on damages," to which there was no response by the defendants, it is HEREBY ORDERED that plaintiff's motion is DENIED.

**COUNSEL:** For HOWARD FRIEDMAN, PLAINTIFF: B. JOHN BIALECKI, JR., STEVENS AND BIALECKI, PHILA, PA USA.

**JUDGES:** William H. Yohn, Jr., Judge

**OPINION BY:** William H. Yohn, Jr.

**OPINION:**

**MEMORANDUM AND ORDER**

Yohn, J.

June 30, 1997

Plaintiff has filed a motion for "entry of default judgment and hearing on damages" on the ground that the defendants, the Israel Labour Party, Haim Ramon, David Libai, Moshe Shahal and Tova Elinson, were properly served and have now failed to plead or otherwise appear in this action. For the reasons that follow, plaintiff's motion will be denied.

**I. DISCUSSION**

Plaintiff claims that his process server, Donna Moskowitz, properly served the defendants in Israel between November, 1996 and January, 1997. In this regard, plaintiff attaches to his motion an affidavit of Moskowitz in which she details how she went about serving each defendant. As to Ramon and Shahal, Moskowitz explains that she faxed and mailed a copy of the complaint, certified mail/return receipt requested, in late November, 1996, but was [*2] unable to serve the complaint personally because Ramon and Shahal would not meet her at their Knesset offices. See Pl's Exh. B & C (with certified receipts attached showing that the mail was delivered). As to Elinson, Moskowitz explains that she telephoned Elinson's office in advance to notify Elinson that Moskowitz was coming to the office to serve the complaint and then once there handed the unopened envelope containing the complaint to a secretary and proclaimed "she (Elinson) is served." See Pl's Exh. D. As to Libai, Moskowitz explains that she gave the complaint to Libai's secretary who read it in front of Moskowitz and stated that she would pass it along to Libai. See Pl's Exh. E. Finally, as to the Labour Party, Moskowitz explains that on two different occasions she sent the complaint certified mail/return receipt requested to Shimon Peres, the party's former leader, at the Knesset but never received any notice that the mailing had been properly received. See Pl's Exh. F.

Plaintiff's service of process did not comply with *Rule 4(f) of the Federal Rules of Civil Procedure.* Rule 4 (f) reads as follows:

**(f) Service Upon Individuals in a Foreign Country** [*3] . Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed . . . may be effected in a place not within any judicial district of the United States: (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice:

(A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or

(B) as directed by the foreign authority in response to a letter rogatory or letter of request; or

(C) unless prohibited by the law of the foreign country, by

(i) delivery to the individual personally of a copy of the summons and the complaint; or

(ii) any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be [*4] served; or

(3) by other means not prohibited by international agreement as may be directed by the court.

*Fed. R. Civ. P. 4 (f)*.

The Hague Convention mentioned in paragraph (1) is a multilateral, international treaty ratified by twenty-three nations, including the United States and Israel. The primary purpose of the Convention is to provide a simplified way to serve process abroad, to assure that defendants sued in foreign jurisdictions receive actual and timely notice of suit, and to facilitate proof of service abroad. See *Volkswagenwerk A.G. v. Schlunk, 486 U.S. 694, 698, 100 L. Ed. 2d 722, 108 S. Ct. 2104 (1988).* "The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." *Id. at 698-99;* Hague Convention, Art. 3. After the "central authority" receives the request, it must serve the documents by the method prescribed by the internal law of the receiving state. See Hague Convention, Art. 5. The "central authority" must then complete a certificate stating that the documents have been served and forward this certificate to the applicant. Id., Art. 6. If the document has [*5] not been served, the certificate must set out the reasons that have prevented service. Id.

Article 10 and Article 19 of the Convention allow for alternative methods of service. They read as follows:

> Provided the State of destination does not object, the present Convention shall not interfere with--
>
> (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination. (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, officials or other competent persons of the State of destination.

Hague Convention, Art. 10.

> To the extent that the internal law of a contracting State permits methods of transmission, other than those provided

for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

Hague [*6] Convention, Art. 19.

Thus, under the Convention, use of a "central authority" is not the only way to effect service abroad. The alternative methods outlined in Article 10 and Article 19 and in Rule 4 (f)(2)(C)(i) & (ii) may be used as long as the nation receiving notice has not objected to them and/or they are accepted methods of transmission under its internal laws. See *DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 288 (3d Cir. 1981)* (the more liberal methods provided in Rule 4 (f) may be used "as long as the nation receiving notice has not objected to them"); see, e.g., *Fed. R. Civ. P. 4 (f)*, Practice Commentary C4-24, p. 66. ("As long as the nation concerned has not, in its ratification or in any other part of its law, imposed any limits on particular methods, or made an unequivocal statement that only specifically listed methods may be used, other methods, like those set forth in paragraph (2) of Rule 4 (f), may be resorted to, as the opening words of paragraph (2) recite."). n1

n1 The opening words of paragraph (2) are "unless prohibited by the law of the foreign country." *Fed R. Civ. P. 4 (f)(2)(C).*

[*7]

In its ratification of the Hague Convention, Israel made the following relevant declarations and reservations:

a) The Central Authority in Israel within the meaning of Articles 2, 6 and 18 of the Convention is: The Director of Courts, Directorate of Courts, Russian Compound, Jerusalem;

b) The State of Israel, in its quality as State of destination, will, in what concerns Article 10, paragraphs b) and c), of the Convention, effect the service of judicial documents only through the Directorate of Courts, and only where an application for such service emanates from a judicial authority or from the diplomatic or consular representation of a Contracting State.

Hague Convention, Declaration of the State of Israel.

Based on the foregoing, plaintiff's effectuation of service did not comply with Rule 4 (f) and the Hague Convention. Plaintiff obviously did not forward his complaint directly to the Israeli Director of Courts under Articles 3-6 of the Hague Convention. Instead, plaintiff hired Moskowitz to personally serve the defendants or mail copies of the complaint to them certified mail/return receipt requested. As for the personal service, it conflicts with [*8] Israel's ratification declaration which expressly limits the freedom of plaintiff to serve "judicial documents directly through competent persons of the State of destination" and instead requires that alternative personal service be effected 1) through the Directorate of Courts and 2) after a judicial or diplomatic request from the state of origin.

As for the mailing of the complaint by certified mail/return receipt requested, it is not a valid method of service under Article 10 (a) of the Convention, see, e.g., *Bankston v. Toyota Motor Corp., 889 F.2d 172, 174 (8th Cir. 1989)* (finding that the word "send" in Article 10 (a) is not the equivalent of "service of process" in 10 (b) and (c) and therefore paragraph 10 (a) does not provide a basis for the service of process by mail on foreign parties in a lawsuit); *Gallagher v. Mazda Motor of America, 781 F. Supp. 1079, 1081 (E.D. Pa. 1992)* (interpreting paragraph (a) to provide for the service of *subsequent* papers after service of process has been effectuated by other means, not for an independent method for the service of process); *Raffa v. Nissan Motor Co., 141 F.R.D. 45, 46-47 (E.D. Pa. 1991)*, and plaintiff has not [*9] shown that certified mail/return receipt requested is even a method of transmission permitted under internal Israeli law. See Hague Convention, Art. 19; *Fed. R. Civ. P. 4 (f)(2)(C)(ii)*. n2

n2 Plaintiff has altogether failed to cite *any* Israeli law pertaining to the proper service of process.

In sum, plaintiff has not provided the court with any basis upon which to approve of his service of process on the Israeli defendants. Plaintiff has failed to forward copies of the complaint directly to the Director of Courts in compliance with Articles 3-6 of the Hague Convention and plaintiff has failed to show the court that he has properly followed any of the alternative procedures outlined in Articles 10 and 19 (subject to Israel's limitations) and in *Federal Rule of Civil Procedure 4 (f)(2)(C)*. Thus, plaintiff's service of process on the Israeli defendants

was improper and his motion for default judgment will be denied. n3

n3 Because the court will not grant plaintiff's request for default judgment, there is no need for an evidentiary hearing on damages.

[*10]

If plaintiff does not complete proper service within sixty (60) days of the date of this order, or show good cause why service has not been made prior to that date, the action will be dismissed for lack of prosecution as to any defendant not properly served.

An appropriate order follows.

**ORDER**

AND NOW, this 30th day of June, 1997, upon consideration of the "motion of plaintiff for entry of default judgment and hearing on damages," to which there was no response by the defendants, it is HEREBY ORDERED that plaintiff's motion is DENIED.

IT IS FURTHER ORDERED that plaintiff is granted leave to complete proper service as to each defendant within sixty (60) days of the date of this order. If any defendant is not properly served within sixty (60) days of the date of this order, or good cause shown why service has not been made, the action will be dismissed for lack of prosecution as to any defendant not so served.

William H. Yohn, Jr., Judge

# APPENDIX "8"

LEXSEE 2006 U.S. DIST. LEXIS 34473

**MPS IP SERVICES CORP., a Florida corporation; and, MODIS, INC., a Florida corporation, Plaintiffs, vs. MODIS COMMUNICATIONS, INC., a Canadian corporation; and, RICHARD GODWIN, a Canadian resident, Defendants.**

**CASE NO. 3:06-cv-270-J-20HTS**

**UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF FLORIDA, JACKSONVILLE DIVISION**

***2006 U.S. Dist. LEXIS 34473***

**May 30, 2006, Decided**

**SUBSEQUENT HISTORY:** Judgment entered by, Injunction granted at *Mps Ip Servs. Corp. v. Modis Communs., Inc., 2007 U.S. Dist. LEXIS 15637 (M.D. Fla., Mar. 6, 2007)*

**COUNSEL:** [*1] For MPS IP Services Corp., a Florida corporation, Modis, Inc., a Florida corporation, Plaintiffs: Jeffrey S. York, Michael T. Fackler, McGuire-Woods LLP, Jacksonville, FL.

**JUDGES:** Howard T. Snyder, UNITED STATES MAGISTRATE JUDGE.

**OPINION BY:** Howard T. Snyder

**OPINION:**

**ORDER**

This cause is before the Court on Plaintiffs' Motion to Allow Service of Process by Alternative Means (Doc. #10; Motion), filed on May 9, 2006.

Plaintiffs request that the Court permit them to serve Defendants through alternative means, namely "email, facsimile, and regular mail." Motion at 3. They assert an inability to effect service via traditional methods due to the apparent lack of a current valid physical address for Defendants, a Canadian corporation and its sole owner and shareholder. *Id.* at 2-3; *see* Return of Service, attached to Summons in a Civil Case (Docs. ##8,9), at 2, filed on April 28, 2006; Complaint for Injunctive Relief (Doc. #1; Complaint) at 3, filed on March 23, 2006. Plaintiffs also state they have been in previous contact with Defendants through their allegedly infringing website www.modis.com and therefore that "email via the . . . website provides a reliable means of communication[. [*2] ]" Motion at 4.

Pursuant to *Rule 4(f), Federal Rules of Civil Procedure* (Rule(s)), "service upon an individual n1 [in a foreign country] may be effected in a place not within any judicial district of the United States . . . by other means not prohibited by international agreement as may be directed by the court." Although the Rule provides several methods for serving a foreign individual or corporation, it has been held there is no requirement that a party first exhaust those methods before petitioning a court for permission to use alternative means under *Rule 4(f)(3). Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1014-16 (9th Cir. 2002).*

n1 *Rule 4(h)* provides that "service upon a . . . foreign corporation . . . shall be effected . . . in any manner prescribed for individuals by subdivision (f)[.]"

Thus, Plaintiffs' request may be granted so long as service by email, facsimile, or regular mail does not violate any international agreement. [*3] Both the United States and Canada are signatories to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (Hague Convention), Nov. 15, 1965, 20 U.S.T. 361. Article 19 of the Hague Convention permits service by any method allowed by the internal laws of the country in which service is made. British Columbia n2 (Canada) Supreme Court Rule 12(1) provides for court ordered substituted service "[w]here for any reason it is impracticable to serve a document[.]" Service of process by email has been held not to be in contravention of the laws of British Columbia. *See D'Acquisto v. Triffo, 2006 U.S. Dist. LEXIS 1225, No. 05-C-0810, 2006 WL 44057, at *2 (E.D. Wis. Jan. 6, 2006).* Likewise, service by facsimile

and regular mail would not appear to offend either the Hague Convention or the laws of British Columbia.

n2 Defendant Modis Communications, Inc.'s registered business address is located in British Columbia, Canada, and Defendant Richard Godwin is believed to reside in British Columbia. Complaint at 2-3.

[*4]

Based on the foregoing, the Motion (Doc. #10) is **GRANTED** and Plaintiffs may perfect service by the following methods: 1) email through Defendants' website www.modis. com; 2) facsimile; and 3) regular mail.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of May, 2006.

/s/ Howard T. Snyder

UNITED STATES MAGISTRATE JUDGE