**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| CHRISHA CREATIONS, LTD. | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | 1:06-CV-00499-S-LDA |
| VS. | : | |
| | : | |
| TL TOYS HK, LTD. | : | |
| | : | |
| Defendant. | : | MAY 4, 2007 |

**DEFENDANTS' MEMORANDUM OF LAW IN**
**OPPOSITION TO MOTION FOR DEFAULT JUDGMENT**

Joseph K. Scully (#6217)
*jkscully@daypitney.com*
Day Pitney LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)

On behalf of Defendant
TL TOYS HK, LTD.

**TABLE OF CONTENTS**

Introduction ........ 1

I. Background ........ 2

II. The Court Should Not Enter Default Judgment Because Chrisha Failed To Effect Proper Service On TL Toys. ........ 3

A. Service Under the Federal Rules of Civil Procedure and the Hague Convention. . 4

B. Chrisha Cannot Rely On Article 10(c) of the Hague Convention Because The People's Republic of China Filed An Objection To the Use of Article 10(c) On Behalf Of Hong Kong. ........ 6

C. Plaintiff's Attempt At Service Did Not Comply With the Requirements of Hong Kong Law For Serving Process In a Civil Action Brought In a Foreign Jurisdiction. ........ 9

III. "Good Cause" Exists For Denying Chrisha's Motion for Entry of Judgment........ 13

A. The Entry of Default Was Not Willful. ........ 14

B. Denying Chrisha's Motion for Entry of Judgment Would Not Prejudice Chrisha. ........ 17

C. TL Toys Has Meritorious Defenses to Chrisha's Claims. ........ 17

D. TL Toys Has Proffered A Legitimate Basis For Not Responding To the Complaint........ 18

E. The Conduct of the Parties Supports Denying Chrisha's Motion for Entry of Judgment. ........ 18

F. The Amount of Money At Issue Clearly Favors Allowing This Matter To Be Litigated On Its Merits. ........ 19

G. TL Toys Filed A Motion to Set Aside Entry of Default and Promptly Opposed Chrisha's Motion for Entry of Judgment. ........ 20

IV. Chrisha's "Proofs" In Support Of Its Request For An Approximately $10 Million Default Judgment Are Wholly Insufficient and Suspect. ........ 20

Conclusion ........ 23

# TABLE OF AUTHORITIES

## Cases

*Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989) .................................................... 9

*Cablevision of N.J., Inc. v. Pedolsky*, 2007 U.S. Dist. LEXIS 16632 (D.N.J. 2007) ..................... 3

*Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000) ............. 13

*Clarke v. Blais*, 2006 U.S. Dist. LEXIS 21757 (D. Me. 2006)..................................................... 13

*Combs v. Nick Garin Trucking*, 263 U.S. App. D.C. 300 (D.C. Cir. 1987) .................................. 3

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994) ................................ 13

*Coon v. Grenier*, 867 F.2d 73 (1st Cir. 1989)................................................................................. 13

*Dagen v. CTC Grp. Holdings, Ltd.*, 2002 U.S. Dist. LEXIS 25767 (S.D.N.Y. March 7, 2002).... 7

*Denlinger v. Chinadotcom Corp.*, 110 Cal.App.4th 1396, 2 Cal.Rptr.3d 530 (Cal.App. 6 Dist., 2003) ........................................................................................................................................ 7

*Dr. Ing. H.C.F. Porsche v. Superior Court*, 123 Cal.App.3d 755, 177 Cal.Rptr. 155 (Cal.App. 1981) ........................................................................................................................................ 9

*Elmet Techs., Inc. v. Advanced Techs. Sys.*, 2006 U.S. Dist. LEXIS 22690 (D. Me. April 24, 2006) ...................................................................................................................................... 19

*Elmet Techs., Inc. v. Advanced Techs. Sys.*, 2006 U.S. Dist. LEXIS 30111 (D. Me. 2006)......... 19

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ......................................................... 14

*FDIC v. Francisco Inv. Corp.*, 873 F.2d 474 (1st Cir. 1989) ...................................................... 17

*General Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109 (1st Cir. 1990).......... 3

*Golub v. Isuzu Motors*, 924 F. Supp. 324 (D.Mass. 1996) ........................................................... 9

*Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476 (3d Cir. 1993)........................... 3

*Great Works Props. v. Perma Roofing, Inc.*, 2006 U.S. Dist. LEXIS 31911 (D. Me. 2006) ....... 17

*Kadota v. Hogosai*, 125 Ariz. 131, 608 P.2d 68 (Ariz.App. 1980) ............................................... 8

*Key Bank of Me. v. Tablecloth Textile Co.*, 74 F.3d 349 (1st Cir. 1996)..................................... 14

*KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1 (1st Cir. 2003).................................. 14, 23

*Lucerne Farms v. Baling Techs., Inc.*, 208 F.R.D. 463 (D. Me. 2002) ....................................... 17

*McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498 (1st Cir. 1996)............................................ 14

*Moreland v. Tohnichi Mfg. Col., Ltd.*, 1995 WL 616667 (N.D. Ill. 1995) .................................... 9

*Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)...................................................... 3

*Pennoyer v. Neff*, 95 U.S. 714 (1877) ............................................................................................ 3

*Playboy Enters. v. Asiafocus Int'l*, 1998 U.S. Dist. LEXIS 10359 (D. Va. 1998)......................... 5

*Pochop v. Toyota Motor Co.*, 111 F.R.D. 464 (S.D. Miss. 1986) ........ 9

*Schmir v. Prudential Ins. Co. of Am.*, 220 F.R.D. 4 (D. Me. 2004)........ 19

*Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 2007 U.S. Dist. LEXIS 6250 (D. Or. Jan. 24, 2007) ........ 8

*Stranahan Gear Co. v. NL Indus.*, 800 F.2d 53 (3d Cir. 1986) ........ 3

*Taft v. Moreau*, 177 F.R.D. 201 (D.Vt. 1997). ........ 9

*Volkswagenwerk Aktiengesell-schaft v. Schlunk*, 486 U.S. 694 (1988)........ 5

*Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712 (D. Md. 2001) . 20

*Westvaco Corp. v. Viva Magnetics, Ltd.*, 2002 U.S. Dist. LEXIS 13449 (S.D.N.Y. 2002) ........ 15

**Rules**

Fed. R. Civ. P. 4........ 3, 4, 9

Fed. R. Civ. P. 55........ 1, 14

**Hong Kong Order, Ordinances and Practice Directions**

Chapter 1, §3 (Interpretation and General Clause Ordinance) ........ 11

Rules of High Court, Order 7........ 12

Rules of High Court, Order 10........ 12

Rules of High Court, Order 65........ 11-12

Rules of High Court, Order 69........ 10-12

Section 356........ 12

Practice Direction 24.2........ 12-13

**International Treaties**

Hague Convention reprint, *Martindale-Hubbell International Law Digest* (2006 ed.), p. IC-5........ *passim*

## INTRODUCTION

Defendant TL Toys HK, Ltd. ("TL Toys") submits this Memorandum of Law in Opposition to the Motion for Entry of Judgment filed by Plaintiff Chrisha Creations, Ltd. ("Chrisha" or "Plaintiff"). On March 7, 2007, Chrisha obtained a clerk's entry for default by representing to the clerk that service of process had been properly effectuated upon Defendant TL Toys HK, Ltd. ("TL Toys") in Hong Kong. Upon learning of Chrisha's Motion for Entry of Judgment and based upon Chrisha's failure to comply with the Hague Convention, TL Toys filed a motion pursuant to Fed. R. Civ. P. 55(c) to vacate the clerk's entry of default on April 11, 2007.[1] Rather than await a decision as to whether the clerk's entry of default should be vacated, Chrisha instead insists that this Court enter default judgment on the papers for over $10 million. The Court should deny Chrisha's motion for default judgment – and vacate the clerk's entry of default *sua sponte* – because:

- Chrisha failed to serve its Complaint in accordance with the Hague Convention and, therefore, the clerk's entry of default should be vacated;
- Chrisha purportedly served its Complaint under Article 10(c) of the Hague Convention, but this method of service is expressly prohibited under a June 10, 1997 objection filed on behalf of Hong Kong;
- The interests of justice and facts of this case dictate against entry of judgment; and
- The affidavit supplied by Chrisha to balloon an alleged $1.7 million contract dispute into a $10 million windfall are wholly deficient and make clear that TL Toys has meritorious defenses.

[1] The Court referred TL Toys's Motion to Set Aside Entry of Default to Magistrate Judge Almond. A hearing on that motion is presently scheduled for May 14, 2007.

## I. BACKGROUND

Chrisha filed its Complaint on November 16, 2006, but, to date, has not properly served TL Toys. On December 27, 2006, TL Toys' New York counsel accepted Chrisha's invitation that the parties engage in settlement discussions in New York. New York counsel for TL Toys agreed to partake but notified Chrisha's attorney, prior to meeting in New York, that counsel was not authorized to accept service of process. New York counsel notified Chrisha that "[w]e understand that your local attorney filed, but has not served, a Complaint . . . . [W]e are not authorized to accept service of process in that matter[.]" (Attached hereto as Exhibit 1.)[2] New York counsel further notified Chrisha that, "[w]e are all meeting under the assumption that anything said or done on December 27th, including our clients' attendance, is without waiving any service/jurisdictional defenses." (Attached hereto as Exhibit 2.) TL Toys has not filed an answer because TL Toys continues to await the proper service of the Complaint in this action under the Federal Rules and international law.

On March 6, 2007, Chrisha filed an Application for Entry of Default, which the clerk entered summarily on March 7, 2007. (Document No. 11 & 12.) The clerk relied on an affidavit submitted by Chrisha's attorney that made it appear as if service was proper. Chrisha chose not to serve TL Toys with the application. Chrisha then proceeded to file this motion for default judgment. TL Toys has moved to vacate the clerk's entry of default and now opposes entry of default judgment.

---

[2] At the time, New York counsel was with the law firm of Pitney Hardin LLP. With the merger of Day, Berry & Howard and Pitney Hardin LLP, the combined firm of Day Pitney LLP now represents TL Toys.

## II. THE COURT SHOULD NOT ENTER DEFAULT JUDGMENT BECAUSE CHRISHA FAILED TO EFFECT PROPER SERVICE ON TL TOYS.

The Court should deny Chrisha's Motion for Entry of Judgment because Chrisha has not served TL Toys with process in accordance with the Federal Rules of Civil Procedure, the Hague Convention or Hong Kong law. The clerk's entry of default, therefore, is void (as would be any subsequent judgment on that default). *See Pennoyer v. Neff*, 95 U.S. 714, 725-27 (1877) (a default judgment rendered by a court which lacked personal jurisdiction over the defendant is void). Where, as here, a defendant demonstrates that the plaintiff failed to effectuate proper service of a complaint and summons,[3] the court must set aside an entry of default or judgment on a default as improvidently entered. *See Grand Entertainment Group v. Star Media Sales*, 988 F.2d 476, 493 (3d Cir. 1993) (vacating and remanding with instructions to remove the default judgment entered against Spanish defendants holding that the district court lacked jurisdiction to enter any judgment because the plaintiff failed to serve the Spanish defendants in compliance with either federal, Pennsylvania or Spanish law); *Combs v. Nick Garin Trucking*, 263 U.S. App. D.C. 300, 448 (D.C. Cir. 1987) (holding that because "no effective service as yet accomplished in this case, we reverse the default judgment as void"); *Stranahan Gear Co. v. NL Indus.*, 800 F.2d 53, 56-58 (3d Cir. 1986) (upholding district court's order granting motion to strike default judgment on the grounds that the default judgment was void because service was technically ineffective under Fed. R. Civ. P. 4(c)(2)(C)(ii) because the defendant had not returned the form 18-A acknowledgement); *see also General Contracting & Trading Co., LLC v. Interpole, Inc.*, 899 F.2d 109, 114 (1st Cir. 1990) (stating that it "is settled beyond peradventure that a void

---

[3] "A defendant may challenge the personal jurisdiction of the rendering court by attacking the validity of the service of process." *Cablevision of N.J., Inc. v. Pedolsky*, 2007 U.S. Dist. LEXIS 16632, at *3 (D.N.J. 2007); *see also Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 103 (1987) (noting that it is axiomatic that valid service of process is a prerequisite to a court's assertion of personal jurisdiction over a defendant).

judgment, such as one entered by a court which lacks personal jurisdiction over the defendant, is a nullity and may be attacked at any time").

**A. Service Under the Federal Rules of Civil Procedure and the Hague Convention.**

Service upon TL Toys in Hong Kong is governed by Fed. R. Civ. P. 4(h), "Service upon Corporations and Associations", which states:

> Unless otherwise provided by federal law, service upon a domestic or foreign corporation or upon a partnership or other unincorporated association that is subject to suit under a common name, and from which a waiver of service has not been obtained and filed, shall be effected: . . .
>
> (2) in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(c)(i) thereof.

Fed. R. Civ. P. 4(f), in turn, provides, with respect to service on a foreign corporation, that it may be effected only:

> (1) by any internationally agreed means reasonably calculated to give service, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> (2) if there is no internationally agreed means of service or if the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; . . .

Fed. R. Civ. P. 4(f).

Sub-paragraph 4(f)(2) applies only if "there is no internationally agreed means" and is inapplicable because both the United States and Hong Kong are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention"). Hague Convention, fn. 3. The Hague Convention "pre-empts inconsistent methods of service prescribed by state law in all cases to which it

applies." *Volkswagenwerk Aktiengesell-schaft v. Schlunk*, 486 U.S. 694, 699 (1988). It applies whenever service must be effectuated abroad. *Id*.

The Hague Convention requires documents being served abroad to be forwarded directly by the litigant (Chrisha) to the Central Authority designated by the receiving country.[4] *See* Hague Convention, Art. 2-5. The Central Authority for Hong Kong is the "Secretary of the Commonwealth." Formal service pursuant to Article 5(a) of the Hague Convention is then effectuated by the Central Authority of Hong Kong who employs "a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory." *See Playboy Enters. v. Asiafocus Int'l*, 1998 U.S. Dist. LEXIS 10359, at *10-11 (D. Va. 1998)[5] (service appropriate when papers served on the Secretary of the Commonwealth who subsequently forwarded the Summons and Complaint to the Chief Secretary of Hong Kong at the Central Government Offices).

Chrisha has not complied with the procedures set forth under the Hague Convention. The method of service chosen by Chrisha involved the service of pleadings abroad, thereby implicating the Hague Convention. Rather than proceed through the Central Authority, Chrisha had a "law clerk" in Hong Kong (a law firm employee named Poon Ming Hang) deliver the Complaint to an unidentified person at TL Toys in TL Toys' Hong Kong office. Failing to

---

[4] As explained below, China, on behalf of Hong Kong, has filed an objection to Article 10(b) and (c) which requires, among other things, that any documents for service in a foreign action should be forwarded "from judicial, consular or diplomatic officers of" the foreign jurisdiction. This is consistent with Hong Kong's own internal laws concerning the service of foreign process on a Hong Kong entity. *See infra.,* Sections II.B and C.

[5] Copies of all unpublished opinions and other authorities are provided in the Appendix of Unpublished and Other Authorities filed with this Memorandum.

comply with the Hague Convention renders the clerk's entry of default ineffective and this motion for default judgment premature.[6]

**B. Chrisha Cannot Rely On Article 10(c) of the Hague Convention Because The People's Republic of China Filed An Objection To the Use of Article 10(c) On Behalf Of Hong Kong.**

Chrisha hired a "law clerk" in Hong Kong to deliver the Complaint to an unidentified person at TL Toys in TL Toys' Hong Kong office. Chrisha cites to Article 10(c) of the Hague Convention as its sole basis for effectuating service upon TL Toys in Hong Kong. Article 10(c) of the Hague Convention has been rejected by Hong Kong and, therefore, cannot act as a basis for serving an initial pleading.

Article 10 of the Hague Convention provides:

> Provided the State of destination does not object, the present Convention shall not interfere with
>
> a) the freedom to send judicial documents, by postal channels, directly to persons abroad;
>
> b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination; and
>
> c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Sub-sections (b) and (c) are the two sections that address "service" of judicial documents, in contrast to sub-section (a), which references only to "send[ing]" documents abroad.

---

[6] Chrisha has chosen to espouse allegations against counsel of "gamesmanship" to deflect from their own failure to properly serve TL Toys under the Hague Convention. If this Court seeks responses to counsel's *ad hominem* attacks, TL Toys respectfully requests leave to file a supplemental declaration.

As is set forth in the 2006 *Martindale-Hubbell International Law Digest* compilation of 'objections' to the Hague Convention, on June 10, 1997, the Embassy of the People's Republic of China filed an objection to the two sub-sections that address "service" of judicial documents, *i.e*., sub-sections (b) and (c). Hague Convention reprint, *Martindale-Hubbell International Law Digest* (2006 ed.), p. IC-5 (hereinafter "Hague Convention reprint") (Appendix 1); *see also Denlinger v. Chinadotcom Corp.*, 110 Cal.App.4th 1396, 2 Cal.Rptr.3d 530 (Cal.App. 6 Dist., 2003) (stating that "in a June 10, 1997 notification, the People's Republic of China stated that, with respect to Hong Kong, it was **objecting** to article 10(b) and article 10(c) but stated nothing about article 10(a), raising no objection to that provision") (emphasis added); *Dagen v. CTC Grp. Holdings, Ltd.*, 2002 U.S. Dist. LEXIS 25767, * 46 (S.D.N.Y. March 7, 2002) (noting that, although Hong Kong (through China) has objected to sub-paragraphs (b) and (c) of Article 10 of the Hague Convention, it has not objected to sub-paragraph (a)—which is not relied on by Chrisha in this action).

With respect to Hong Kong, China objected to the use of Article 10(b) and (c) by foreign litigants seeking to serve a Summons and Complaint upon a Hong Kong company without first going through the Central Authority for Hong Kong. *Id*. Specifically, the People's Republic of China declared:

> The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters done on 15 November 1965 (hereinafter referred to as the "Convention"), by which the Government of the Kingdom of the Netherlands is designated as the depository to which the Government of the People's Republic of China deposited its instrument of accession on 3 May 1991, will apply to the Hong Kong Special Administrative Region with effect from 1 July 1997. The Government of the People's Republic of China also makes the following declarations:

* * *

> 4. With reference to the provisions of Sub-paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or Other Authority designated, and only from judicial, consular or diplomatic officers of other Contracting States.

Hague Convention reprint, *Martindale-Hubbell International Law Digest* (2006 ed.), p. IC-5 (emphasis added)[7]; *see also Seiko Epson Corp. v. Glory South Software Mfg., Inc.*, 2007 U.S. Dist. LEXIS 6250, at *5 (D. Or. Jan. 24, 2007) (granting a motion for alternative service of process on defendants located in Hong Kong noting that "the only method of service in China that complies with the Hague Convention is personal service through China's 'Central Authority'"); Chu, *The Extraterritorial Service of Judicial Documents from Hong Kong*, 28 Hong Kong L.J. 356, 364 (1998) ("With regard to service effected under Art 10(b) and (c), the Chinese declaration states that requests of service to persons abroad from official channels of a contracting state may only be made by its competent judicial officers, consulates, or embassies and may only be accepted by the Chief Secretary as the designated Central Authority of the Region or other designated organs."); *see generally Kadota v. Hogosai*, 125 Ariz. 131, 136, 608 P.2d 68 (Ariz.App. 1980) (in an analogous context, the court held that since Japan (like, Hong Kong here) objected to service pursuant to sub-sections (b) and (c), "personal service by a Japanese attorney in Japan is ineffective service of process under the Convention."); *id.* at 137 (the foreign country's refusal to accept sub-sections (b) and (c) means that the "method of

[7] With respect to the "other authority", the June 10, 1997 objection further provides, "In accordance with Article 18 the Convention [(which enables foreign governments to designate other authorities in addition to the Central Authority)], [Hong Kong] designates the Administrative Secretary of the Government of the Hong Kong Special Administrative Region as the other authority in the Hong Kong Special Administrative Region." *Id.*

service that [plaintiff] relied upon, personal service in [the foreign country], is expressly disallowed by the treaty.").[8]

While substantial compliance may sometimes satisfy the requirements of Fed. R. Civ. P. 4, the same is not true with respect to international treaties, especially where, as here, a sovereign foreign government expressly objected to the specific form of service used to effectuate service. "Even a showing that [defendant] had actual notice is insufficient to avoid the effect of noncompliance with the [Hague] Convention". *Dr. Ing. H.C.F. Porsche v. Superior Court*, 123 Cal.App.3d 755, 762, 177 Cal.Rptr. 155 (Cal.App. 1981).

### C. Plaintiff's Attempt At Service Did Not Comply With the Requirements of Hong Kong Law For Serving Process In a Civil Action Brought In a Foreign Jurisdiction.

Having failed to comply with the requirements of Hong Kong's objection to the Hague Convention, Chrisha resorts to claiming that its method of service complied with the internal laws of Hong Kong. Citing to Article 19[9] of the Hague Convention, Chrisha essentially claims that none of the other Articles of the Hague Convention are relevant because it can simply serve

---

[8] Article 10(b) and (c) apply to "service" of initial pleadings. Article 10(a), which does not employ the term "service" <u>and upon which Chrisha does not rely</u>, is inapplicable to service of a Summons and Complaint. Thus, even if Chrisha made a belated reference to Article 10(a), service would still be invalid. *See e.g.*, *Pochop v. Toyota Motor Co.*, 111 F.R.D. 464 (S.D. Miss. 1986) (if a foreign country files an objection to sub-section (c), one must rely upon another sub-section and, with respect to service under sub-section (a), this section applies only after initial service effectuated); *Bankston v. Toyota Motor Corp.*, 889 F.2d 172 (8th Cir. 1989) (same); *Moreland v. Tohnichi Mfg. Col., Ltd.*, 1995 WL 616667 (N.D. Ill. 1995) (ruling that "send" in sub-section (a) is not analogous to "serve" in sub-sections (b) and (c), quashing service, and granting an extension of time to serve); *Golub v. Isuzu Motors*, 924 F. Supp. 324 (D.Mass. 1996) (ruling that a country's failure to object to service under sub-section (a) does not translate into consent for such service); *contra Taft v. Moreau*, 177 F.R.D. 201 (D.Vt. 1997).

[9] Article 19 provides: "To the extent that the internal laws of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions."

its foreign action in the same manner that the laws of Hong Kong permit the service of a domestic action. However, interpreting Article 19 in this fashion would render meaningless Hong Kong's objection to sub-paragraphs (b) and (c) of Article 10, which specifically requires that all papers for service of foreign process must be served through the Central Authority. Clearly, if Hong Kong intended that service of foreign process could proceed in the manner espoused by Chrisha, then there would have been no need for it to have filed the objection which it did.[10]

In any event, the internal laws of Hong Kong do not permit a "law clerk" to make service of process for a civil action pending in a foreign jurisdiction. Plaintiff argues that the "internal laws of Hong Kong specifically permit the service of 'documents coming from abroad' in the manner" employed by Plaintiff in this action. (Pl. Opp.[11] p. 15.) Chrisha contends that it had a "law clerk" of its Hong Kong counsel, Wilkinson & Grist, deliver the Complaint to an unidentified employee of TL Toys in TL Toys' Hong Kong office. (Pl. Opp. p. 16-17.) Hong Kong law, however, specifically requires that service of process on a Hong Kong entity for an action pending in a foreign jurisdiction must be effected by the Chief Bailiff of the Hong Kong High Court or his authorized agent. *See* Order 69 The Rules of the Hong Kong High Court Rule (1999) (A copy is attached at Appendix 2.)

Order 69 is entitled "Service of Process From Country or Place Outside Hong Kong." Rule 2 of that order states that "[t]his Order applies to the service on a person in Hong Kong of

---

[10] Similarly, Chrisha's approach would render pointless paragraph 1 of Hong Kong's objection in which Hong Kong objects to Article 8's provision permitting service of judicial documents upon persons abroad, without application of any complusion, directly through diplomatic or consular agents. If, as Chrisha contends, anyone can serve foreign process in Hong Kong, then there would be no need to object to service through diplomatic channels.

[11] "Pl. Opp." refers to Plaintiff's Opposition to TL Toy's Motion to Set Aside Entry of Default, dated April 30, 2007, Document No. 22.

any process in connection with civil or commercial proceedings in a court . . . of a country…outside of Hong Kong where the Registrar receives a written request for service . . . (b) where the court or tribunal is in a convention country, from a consular or other authority of that country . . . ." Order 69, Rule 2.[12] The term "person" as used in Order 69 includes incorporated and unincorporated business entities. *See* Interpretation and General Clauses Ordinance, Ch. 1, § 3 (A copy is attached at Appendix 3.)

Service under Order 69 can only be performed by the "process server" "appointed under rule 4 or his authorized agent." Order 69, Rule 1. Rule 4 of Order 69 states that "[t]he process server for the purposes of this Order shall be the Chief Bailiff." Order 69, Rule 4. Chrisha nonetheless claims that it need not serve TL Toys through the Chief Bailiff because of the language of Rule 3(2) of Order 69. Rule 3(2) provides that subject to paragraphs (3) and (5) "and to any enactment providing for the manner of service of documents on corporate bodies," the process server shall serve process by leaving a copy of the process and a copy of the translation or certificate with the person being served. Order 69, Rule 3(2). Plaintiff argues that the quoted language means that service can be made on a Hong Kong corporation in accordance with Order 65, Rule 3—which sets forth the manner for effecting domestic service on a Hong Kong corporate entity. (Pl. Opp. p. 15.) Order 65, Rule 3, however, does not supercede Order 69's mandatory requirement that process must be served by the Chief Bailiff. (A copy of Order 65 is attached at Appendix 4.) Order 65, Rule 3 only addresses the issue of the manner of

[12] Order 69, rule 2(b)'s requirement that the written request for service come "from a consular or other authority" of the country from which the process is issued is consistent with Hong Kong's objection to sub-paragraphs (b) and (c) of Article 10 of the Hague Convention which imposes a similar requirement that requests for service of process originate "from judicial, consular or diplomatic officers of" the foreign jurisdiction. *See* Hague Convention reprint (Appendix 1) p. IC-5. In its objection to the Hague Convention, Hong Kong specifically designates the Registrar of the Hong Kong High Court as the "authority" responsible for issuing and executing certificates of service under Article 6 (as well as for purposes under Article 9). *Id.*

effecting personal service on a Hong Kong entity (*i.e.*, personal service may be made on a corporation "on the chairman or president of the body or the clerk, secretary, treasurer or similar officer thereof", Rule 3(1) or at its "registered or principal office", Rule 3(2)). The same is true for Companies Ordinance, Section 356, which merely provides a manner of service. (A copy of Section 356 is attached at Appendix 5.) Neither Order 65 nor Section 356 addresses **who** may make service of foreign process.[13] Accordingly, because Order 65, Rule 3 and Section 356 do not address who may serve the process to initiate the foreign proceedings, the more specific requirements of Order 69 control. Because Plaintiff failed to serve through the Chief Bailiff as required under Order 69, Chrisha has failed to effectuate proper service of its Complaint and Summons under Hong Kong law.

Lastly, and of minor significance in light of the failure to effectuate service, Hong Kong's Practice Direction 24.2, sub-section 4 requires pleadings served in Hong Kong upon those who may not be English-proficient to include, in Chinese, an admonition of the consequences of failing to file an Answer. Specifically,

> **Every court form intended to be served in the circumstances set out in para.2 hereof shall in addition be prominently endorsed in Chinese with the following:**

[13] A separate High Court Order, Order 10, addresses who may make service of originating process for a Hong Kong domestic civil action. (A copy of Order 10 is attached at Appendix 6.) Order 10, Rule 1 addresses the service of process generally for actions initiated in Hong Kong and provides that "[a] writ must be served personally on each defendant by the plaintiff or his agent." Order 10, however, is not an "enactment providing for the manner of service of documents on corporate bodies" referenced in Order 69, Rule 3(2). Moreover, even if Order 10 could be construed as such an enactment, then Chrisha's service nonetheless would have been defective under Hong Kong Order 7, which would likewise have to be considered such an enactment, because the summons sent by Chrisha did not issue from the Hong Kong Registry (O. 7, rule5) and was not in the necessary form (O.7, rule 2 & 3). (A copy of Order 7 is attached at Appendix 7.)

> 因這是法律文件，忽視它可帶來嚴重的後果。如有疑問，請儘早向發出文件的法庭登記處(地址)查詢。你亦應考慮聽取律師的意見或是申請法律援助。
>
> **(This is legal document. The consequences of ignoring it may be serious. If in doubt, you should enquire as soon as possible at the Registry of the Court issuing the document, namely (insert address). You should also consider taking the advice of a solicitor or applying for legal aid.)**

(A copy is attached at Appendix 8.) Due to Chrisha's failure to notify the person allegedly served at TL Toys' factory (we do not know who was served with the "sealed" documents), we are unable to ascertain whether that person was provided with the customary admonition included with initial pleadings served in Hong Kong. Regardless, Chrisha's use of Article 10(c) of the Hague Convention is fatal to its service.

## III. "GOOD CAUSE" EXISTS FOR DENYING CHRISHA'S MOTION FOR ENTRY OF JUDGMENT.

Even if the Court were to credit Chrisha's arguments that it made proper service, "good cause" exists for denying Chrisha's Motion for Entry of Judgment. Where a motion for default judgment is opposed, "the standard for granting such a judgment under Rule 55 is governed by the same principles that apply to a motion to set aside entry of a default." *Citadel Management, Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 142 (S.D.N.Y. 2000); *see Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 243 (2d Cir. 1994); *Clarke v. Blais*, 2006 U.S. Dist. LEXIS 21757, * 3-4 (D. Me. 2006) (noting that where plaintiff has filed a Motion for Entry of Judgment, "prior to the entry of default judgment, the defendant may petition the court to set aside an entry of default 'for good cause shown.'").

Accordingly, as with considering a motion to set aside entry of default, this Court has broad discretion in deciding whether to set aside an entry of default. *Coon v. Grenier*, 867 F.2d 73, 75 (1st Cir. 1989). Under Rule 55(c) of the Federal Rules of Civil Procedure, a court may set

aside an entry of default for "good cause." Fed. R. Civ. P. 55(c); *see also KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003) ("a court may set aside an entry of default 'for good cause shown.'"). Because "defaults are generally disfavored and are reserved for rare occasions," any doubt should be resolved in the non-movant's favor to increase the likelihood that the case may be resolved on the merits. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993).

In *McKinnon v. Kwong Wah Restaurant*, 83 F.3d 498 (1st Cir. 1996), the First Circuit set forth a set of non-exhaustive factors that a court may consider:

> (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; [and] (7) the timing of the motion [to set aside entry of default].

*Id.* at 503. These factors are not intended to be a precise formula—each cases turns on its own unique circumstances.[14] *Coon*, 867 F.2d at 76.

**A. The Entry of Default Was Not Willful.**

TL Toys did not file an Answer because Chrisha never served the Complaint in accordance with the Hague Convention. Chrisha was well aware of TL Toys' position on Chrisha's faulty service when it filed its Motion for Entry of Default Judgment on April 9, 2007. Indeed, TL Toys made this point in its filings in the Southern District of New York. (Memorandum of Law In Opposition to Defendant's Motion to Dismiss, Civ. No. 07 CV 1366 (DAB) (S.D.N.Y. April 5, 2007) (attached hereto as Exhibit 3).)

---

[14] "Thus, Rule 55(c), as an expression of the traditional inherent equity power of the federal courts, permits the consideration of a panoply of relevant equitable factors." *KPS & Assocs.*, 318 F.3d at 12 (internal citations and quotations omitted). This Court is afforded great latitude to set aside the entry of default, including the goal of "resolving cases on the merits," *Key Bank of Me. v. Tablecloth Textile Co.*, 74 F.3d 349, 356 (1st Cir. 1996), and avoiding "harsh or unfair results." *Enron Oil*, 10 F.3d at 96.

Even if TL Toys were mistaken and Chrisha's service complied with the Hague Convention (which it did not), TL Toys' good faith belief in Chrisha's failure to effectuate proper service demonstrates that the entry of default was not willful. *Westvaco Corp. v. Viva Magnetics, Ltd.*, 2002 U.S. Dist. LEXIS 13449, *8-9 (S.D.N.Y. 2002) (defendant's good faith, but mistaken, belief that it need not answer the complaint because the plaintiff had failed to serve it properly under the Hague Convention was a sufficient showing of "good cause" to set aside entry of default).

The holding in *Westvaco* is particularly instructive to the Court's consideration of the circumstances in this matter. In that case, the plaintiff Westvaco initiated service of the Complaint on the defendant Viva, a Hong Kong corporation, under the Hague Convention. *Id.* at *3. Unlike Chrisha, Westvaco complied with the Hague Convention and Hong Kong law, by having "a Bailiff's Assistant of the High Court of Hong Kong Special Administration Region hand-deliver[] the Complaint to Viva's administrative manager in Viva's Hong Kong offices." *Id.* Viva nonetheless argued that service was not effective, contending that Westvaco failed to comply with the rules of service under the Hague Convention[15] and that Viva, therefore, was not obligated to answer the Complaint. *Id.* Moreover, after Westvaco had filed its action in the Southern District of New York, Viva filed a competing action in California. *Id.*

Because Viva failed to answer within the time prescribed by Rule 12, the clerk entered a default against Viva. *Id.* at *5. Westvaco subsequently moved for judgment on the default. Viva then filed an appearance and opposed that motion. *Id.* Westvaco argued that the court should enter a default judgment against Viva because service was proper under the Hague

[15] Viva contended that service was defective because, among other things, Westvaco did not serve Viva with a summary of documents pursuant to Article 5 of the Hague Convention and that the process server, the Bailiff's Assistant, failed to identify himself. *Westvaco*, 2002 U.S. Dist. LEXIS 13449, at *3 n.1 & *7.

Convention and Viva demonstrated bad faith by pursuing the competing California action but failing to challenge the effectiveness of service under Rule 12(b)(5). *Id.* at *7.

Noting that "doubts concerning whether default judgment is warranted should be resolved in favor of the [defaulted] party," the court held that Westvaco had demonstrated sufficient "good cause" to deny the motion for default judgment and to set aside the clerk's entry of default. *Id.* at *8. The court stated:

> Here, Viva has shown sufficiently that its failure to file a timely response to the Complaint was not "willful," so as to warrant the unusual remedy of a grant of default judgment against it. **It has proffered a reasonable explanation for its delay in defending the action, specifically, that it believed that service had not been properly effected and that it was not, therefore, required to respond to the Complaint.** Under the circumstances of this case, Viva's failure to respond to the Complaint within twenty days after the document was delivered to Viva's Hong Kong offices does not warrant the extreme sanction of a default judgment.

*Id.* (emphasis added).

The facts of this matter are even more compelling than those of *Westvaco*. TL Toys has demonstrated that Chrisha has failed to comply with the Hague Convention or Hong Kong law. Unlike in *Westvaco*, Chrisha failed to serve its Complaint and Summons through either the Central Authority or the High Court's Chief Bailiff. Even if this Court were ultimately to hold otherwise, in light of the foregoing authorities, TL Toys had a good faith basis for believing that it was not obligated to answer the Complaint because Chrisha had not complied with the Hague Convention. Moreover, Chrisha was well aware of TL Toys' position in this respect. Accordingly, for the same reasons as found by the *Westvaco* court, TL Toys has demonstrated good cause for denying this motion for default judgment and setting aside the entry of default.

**B. Denying Chrisha's Motion for Entry of Judgment Would Not Prejudice Chrisha.**

The Court's denying Chrisha's motion and vacating the clerk's entry of default would not prejudice Chrisha. Chrisha contends that it has been prejudiced because it has been unable to obtain an expedited resolution of this dispute and payment by TL Toys. (Pl. Opp. p. 10-11.) This is not the sort of delay that courts consider under Rule 55(c). "[I]n the context of a Rule 55(c) motion, delay in and of itself does not constitute prejudice." *KPS & Assocs.*, 318 F.3d at 15 (1st Cir. 2003). "The issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion." *FDIC v. Francisco Inv. Corp.*, 873 F.2d 474, 479 (1st Cir. 1989). There is no indication of any such prejudice in this matter. Moreover, Chrisha's own actions belie its claims of seeking a speedy resolution of this matter. Chrisha filed its Complaint on November 16, 2006, but, did not attempt to make service until two months later in January 2007. When TL Toys pointed out that the service did not comply with the Hague Convention, Chrisha did not take appropriate steps to effectuate service properly; rather it filed its application for entry of default, but did not serve a copy on TL Toys. TL Toys' delay in responding to "service" is modest in light of the pace at which Chrisha has pursued this matter.

**C. TL Toys Has Meritorious Defenses to Chrisha's Claims.**

TL Toys has meritorious defenses to the claims asserted by Chrisha. "In order to establish the existence of a meritorious defense, a defendant seeking relief from an entry of default 'need only plausibly suggest the existence of facts which, if proven at trial, would constitute a cognizable defense.'" *Great Works Props. v. Perma Roofing, Inc.*, 2006 U.S. Dist. LEXIS 31911, at *9 (D. Me. 2006) (quoting *Lucerne Farms v. Baling Techs., Inc.*, 208 F.R.D. 463, 466 (D. Me. 2002)). This action involves the sale of inflatable holiday decorations which

Chrisha alleges were defective causing it to suffer $10 million in "lost profits" and "damages". Although Chrisha alleges that the products were defective, the evidence presented at trial will show that Chrisha failed to reject the products in a timely manner and, as a consequence, deprived TL Toys of an opportunity to cure the alleged defects, as is required under controlling law. The evidence also will demonstrate that TL Toys manufactured the products in accordance with the requested design. In addition, Chrisha's claimed damages have no basis in law or fact because it failed to mitigate its alleged damages.

**D. TL Toys Has Proffered A Legitimate Basis For Not Responding To the Complaint.**

TL Toys' explanation for not responding to the Complaint supports setting aside the entry of default. As detailed above, Chrisha failed to make proper service of process on TL Toys. TL Toys advised Chrisha of this legal fact, repeatedly. Indeed, in the action filed by TL Toys in the Southern District of New York, Chrisha moved to dismiss under the "first-filed" rule. In response to that (pending) motion, TL Toys advanced the same points made in this motion—*i.e.*, Chrisha failed to make proper service under the Hague Convention and, accordingly, the District of Rhode Island could not exercise jurisdiction over TL Toys. (*See* Exhibit 2.) As the *Westvaco* court found, a defendant's good faith belief that it had not been properly served is "a reasonable explanation" for delay in defending an action. *Westvaco*, 2002 U.S. Dist. LEXIS 13449 at *8. Here, where it is clear that Chrisha did not comply with the requirements of the Hague Convention, TL Toys certainly has demonstrated a reasonable, good faith basis for not responding to the Complaint.

**E. The Conduct of the Parties Supports Denying Chrisha's Motion for Entry of Judgment.**

TL Toys has acted in good faith. As demonstrated in its correspondence to Chrisha's attorney and its filings in the New York action, TL Toys consistently has taken the position that

it has never been properly served. The fact that TL Toys initiated a competing action in New York does not demonstrate bad faith on its part. *Westvaco*, 2002 U.S. Dist. LEXIS 13449 at *8 (noting that the fact that the defendant pursued a competing action even after receiving notice of the first-filed action was not an egregious attempt to evade the plaintiff's claims). Chrisha, on the other hand, filed an application for entry of default without serving or even notifying TL Toys with a copy of that application.[16] Rather than take the steps necessary to effectuate proper service, Chrisha repeatedly represented to this Court that service was proper despite the clear provisions of the Federal Rules of Civil Procedure and the requirements of the Hague Convention.

**F. The Amount of Money At Issue Clearly Favors Allowing This Matter To Be Litigated On Its Merits.**

The amount in controversy in this matter clearly underscores the importance of scrutinizing Chrisha's "service" of the Complaint and denying Chrisha's Motion for Entry of Judgment. Chrisha is seeking approximately $10 million in alleged damages. Courts in this Circuit have held that far less significant amounts-in-controversy counsel in favor of setting aside an entry of default. *See, e.g., Elmet Techs., Inc. v. Advanced Techs. Sys.*, 2006 U.S. Dist. LEXIS 22690, at *10-11 (D. Me. April 24, 2006) (recommending that defendant's motion to set aside entry of default be granted because, among other things, the amount of money involved, $487,247.00, favored setting aside the entry of default), *aff'd by, order entered by*, *Elmet Techs., Inc. v. Advanced Techs. Sys.*, 2006 U.S. Dist. LEXIS 30111, at *1-2 (D. Me. 2006); *Schmir v. Prudential Ins. Co. of Am.*, 220 F.R.D. 4, 6 (D. Me. 2004) (noting that "[t]he fact that the amount in controversy [a potential six-figure judgment] is neither *de minimus* nor certain further weighs

[16] Although Rule 55(a) does not require Chrisha to serve its application, one would have expected it to do so given that Chrisha was well aware that TL Toys did not believe service was proper.

in favor of this case proceeding to a resolution on the merits, rather than being resolved via default judgment"). Given that Chrisha seeks a potential eight-figure judgment, this Court should follow the "basic tenet of federal civil procedure that actions should ordinarily be resolved on their merits." *Lucerne Farms*, 208 F.R.D. at 465.

### G. TL Toys Filed A Motion to Set Aside Entry of Default and Promptly Opposed Chrisha's Motion for Entry of Judgment.

TL Toys has not unduly delayed in addressing the erroneous entry of default in this matter. "[E]specially when the motion to set aside default arises early in the case, the Court must resolve doubts in favor of a party seeking relief from the entry of default." *Lucerne Farms*, 208 F.R.D. at 465. Chrisha's application for default was filed on March 6, 2007. TL Toys filed its Motion to Set Aside the Entry of Default on April 11, 2007 (Document No. 19), the day after TL Toys learned that Chrisha moved for entry of final judgment by default. An one month span from the entry of default to TL Toys filing of its motion to set aside the default is not so egregious as to weigh in favor of entering a default judgment. *See Wainwright's Vacations, LLC v. Pan Am. Airways Corp.*, 130 F. Supp. 2d 712, 718 (D. Md. 2001) (party seeking to set aside entry of default acted with reasonable promptitude by filing a motion to set aside just over a month after entry of default).

## IV. CHRISHA'S "PROOFS" IN SUPPORT OF ITS REQUEST FOR AN APPROXIMATELY $10 MILLION DEFAULT JUDGMENT ARE WHOLLY INSUFFICIENT AND SUSPECT.

In addition to its deficient service, Chrisha's "proofs" in support of its $10 million request are deficient. In Chrisha's First Claim of Relief, Chrisha seeks a declaration that it properly rejected certain goods delivered by TL Toys. Chrisha first alleges that "TL Toys products [] were not timely delivered by TL Toys as required by the terms of the contracts." (Compl. ¶12.) Chrisha does not provide this Court with "the terms of the contracts" and one

cannot, therefore, conclude that products were untimely. Chrisha then alleges that "Chrisha rejected the TL Toys products pursuant to the contracts . . . and the [U.C.C.]." (Compl. ¶13.) Chrisha does not disclose when it allegedly rejected the goods, how it rejected the goods, and under what contract such rejected complied with. In the First Claim of Relief, Chrisha seeks a "judicial declaration that its rejection of the TL Toys products was proper under the [U.C.C.]." This request requires the Court to apply the facts to the law and, even where one to assume all facts of record as true, there are insufficient facts for this Court to conclude that Chrisha's rejection of goods was timely or proper.

In Chrisha's Second Claim of Relief, Chrisha seeks indemnification for claims that have yet to arise based on the supposedly "defective" products TL Toys delivered, namely inflatable Halloween archway tunnels and other inflatable lawn ornaments. Chrisha alleges without specificity that it "entered into contracts with certain of its customers" and it was "unable to fulfill its obligations to its customers[.]" (Compl. ¶¶22-23.) Chrisha does not provide this Court with a single contract. Here, Chrisha again seeks a "judicial declaration" that requires the Court to apply the facts to the law and, even where one to assume all facts of record as true, there are insufficient facts for this Court to conclude that TL Toys is liable for undisclosed contracts with unidentified customers. Most importantly, fatal to entry of judgment on this claim is the fact that the entire claim is premised upon "third-party claims" as a result of the "defective" lawn ornaments, but Chrisha offers no proof of a single third-party claim.

In Chrisha's Third Claim of Relief, Chrisha seeks actual damages. The damages are allegedly for "various costs, including but not limited to, freight and shipping charges, inspection of the defective products and other costs". (Compl. ¶27.) Chrisha admits that "the full extent of Chrisha's damages has not yet been ascertained." (Compl. ¶28.) The pleading fails to provide

this Court with any guidance on what damages were incurred and how much. Instead, Chrisha now relies exclusively on the Affidavit of William Machala. The affidavit references to "many contracts" and "numerous contracts" but it fails to attach a single contract. It does not even provide the date of a contract or the terms of a single contract. Without providing this Court with any facts, Mr. Machala simply espouses that he suffered damages exceeding $10 million.

Mr. Machala attaches a spreadsheet to his affidavit prepared at an undisclosed time by an unidentified individual. Nowhere does the affiant state that he prepared the spreadsheet or that the spreadsheet is a business record or that the spreadsheet is truthful and accurate. The unknown person who prepared the spreadsheet appears to have relied upon documents, but Mr. Machala chose not to provide this Court with those documents. Mr. Machala also attaches to his affidavit a Chrisha internal memo (coincidentally dated a week before the motion for default judgment). This, too, simply lists dollar amounts that Mr. Machala wants without supporting documents. The Court is not told who prepared this memo, what documents were relied upon, and why the memo conveniently omits the "to" and "from" line one would expect to see in a memo. Lastly, Mr. Machala attaches another spreadsheet prepared at an undisclosed time by an unidentified person who appears to have relied upon documents that have not been provided.

Also interesting is Mr. Machala's ability to declare, in April 2007, lost profits for the year 2007. He claims that his lost profits (for a year that has yet to end) exceed $4 million. He declares breaches of contracts with third parties that exceed $6 million, but he opts not to attach those contracts or provide any details of those contracts, *i.e.*, what products those contracts were for, when those contracts were entered into, what amount those contracts were for, when they were breached, proof that money is owed to the third party, proof that the third party seeks damages from Chrisha, etc.

The Court should not award a litigant over $10 million based upon generalized pleadings and an affidavit wholly lacking in <u>any</u> evidentiary support. Very troubling is the fact that the original products purchased by Chrisha were for under $2 million and Chrisha, without factual support, now seeks this Court's assistance to recover over $10 million. Indeed, because this is not an action for a sum certain or liquidated, this Court cannot enter judgment in the amount demanded by Chrisha without first conducting a hearing at which TL Toys would have an opportunity to challenge Chrisha's offer of proof. *KPS & Assocs.*, 318 F.3d at 17-21 (holding that District Court erred when it determined damages without further inquiry in a case that did not involve a sum certain or liquidated damages).

## CONCLUSION

For all the foregoing reasons, TL Toys respectfully requests that the Court deny Chrisha's motion for entry of default judgment and *sua sponte* vacate the clerk's entry of default against TL Toys.

DEFENDANT, TL TOYS HK LTD.

/s/ Joseph K. Scully

Joseph K. Scully (#6217)
*jkscully@daypitney.com*
Day Pitney LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)

Its Attorneys

**CERTIFICATION OF SERVICE**

I hereby certify that on May 4, 2007 a copy of foregoing **Defendant's Memorandum of Law in Opposition to Motion for Default Judgment** was filed electronically [and served by mail on anyone unable to accept electronic filing.]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.] Parties may access this filing through the Court's system.

/s/ Joseph K. Scully
Joseph K. Scully (#6217)