UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CHRISHA CREATIONS, LTD.<br><br>Plaintiff,<br><br>vs.<br><br>TL TOYS HK, Ltd.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.: 06-0499S |

**REPLY MEMORANDUM OF PLAINTIFF IN FURTHER SUPPORT OF MOTION FOR A DEFAULT JUDGMENT**

Thomas C. Plunkett #1662
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900 - Tel
(401) 331-7123 - Fax
e-mail: tplunkett@kprlaw.com

Stephen J. Smirti, Jr.
Celeste M. Butera
Jason B. Gurdus
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000 - Tel
(516) 357-3333 - Fax

## SUMMARY OF THE ARGUMENT

Plaintiff Chrisha Creations, Ltd. ("Chrisha") respectfully submits this reply in further support of its motion for a default judgment against defendant TL Toys HK, Ltd. ("TL"). Chrisha properly served the complaint on TL in this action and TL has failed to demonstrate good cause to justify setting aside the default against TL in this action. Therefore, a default judgment as to liability and damages should be entered against TL in this action.

## ARGUMENT

### I. SERVICE ON TL TOYS WAS PROPER UNDER THE FEDERAL RULES, THE HAGUE CONVENTION AND HONG KONG LAW

TL clearly misconstrues the joint application of the Federal Rules, the Hague Convention and Hong Kong law with respect to the service of the summons and complaint on TL in this action. Hong Kong has clearly set forth, and not objected to, the method of service performed by Chrisha in this action. Chrisha will demonstrate for the court how the service of process by Chrisha is valid.

#### A. Service Of Process Was Properly Performed By Means Authorized Under Article 10(c) Of The Hague Convention

First, TL continues to mislead this Court by stating that that Federal Rules of Civil Procedure 4(f)(2) only applies if "there is no internationally agreed means". However, Rule 4(f)(2) also clearly provides that it applies if "the applicable international agreement allows other means of service". Fed. R. Civ. P. 4(f)(2). Moreover, service under Federal Rules of Civil Procedure 4(f)(1) is also met herein, as service of process was performed by those means authorized by the Hague Convention. Fed. R. Civ. P. 4(f)(1). As clearly stated within the Hague Convention, means of service, other than service through the Central Authority, are allowed.[1]

---

[1] Chrisha does not contend that service through the Central Authority is not also a valid method. However, TL misleads the court by arguing that service through the Central Authority is the only valid means of service in Hong

Specifically, both Article 10(c) and Article 19 of the Hague Convention allow other methods of service in Hong Kong. These are the grants of authority in the Hague Convention under which Chrisha properly served the summons and complaint on TL.

The crux of TL's argument is that Article 10(c) of the Hague Convention was objected to by Hong Kong and is not a valid method of service. However, a closer look at Article 10(c) and the documents relied upon by TL show that TL's assertion is incorrect. First, Article 10(c) of the Hague Convention states that it:

> shall not interfere with the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through judicial officers, officials or other competent persons of the State of destination.

20 U.S.T. 361, Article 10(c). *See Friedman v. Israel Labour Party*, 1997 U.S. Dist. LEXIS 9204 at *6 (E.D. Pa. 1997) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "7") (holding that the alternative methods outlined in Article 10 and Article 19 may be used as long as the nation in which service is taking place has not objected to them and/or they are accepted methods of transmission under its internal laws).

The documents set forth by TL state that the People's Republic of China, with respect to Hong Kong, declared:

> With reference to the provisions of Sub-paragraphs (b) and (c) of Article 10 of the Convention, documents for service through official channels will be accepted in the Hong Kong Special Administrative Region only by the Central Authority or Other Authority designated, and only from judicial, consular or diplomatic offices of other Contracting States.

---

Kong that complies with the Hague Convention. TL even incorrectly states that the case of *Seiko Epson Corporation v. Glory South Software Manufacturing, Inc.*, 2007 U.S. Dist. LEXIS 6250 (D. Or. 2007) (annexed to appendix of TL's opposition), holds that the only method of service in Hong Kong that complies with the Hague Convention is through the Central Authority. However, the case actually only addresses service in China, and not Hong Kong. *See Id.* at *5.

Hague Convention reprint, Martindale-Hubbell International Law Digest (2006 ed.), p. IC-5 (annexed to appendix of TL's opposition). TL misinterprets this declaration made by China as precluding the type of service of process performed by Chrisha. However, this declaration only deals with a part of Article 10(c), and not the part that Chrisha is relying upon herein. Chrisha is relying upon "the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through . . . other competent persons of the State of destination." 20 U.S.T. 361, Article 10(c). The declaration of China relied upon by TL clearly does not address this part of Article 10(c). Instead, the above declaration only requires that when documents are served through official channels that the documents be sent to the Central Authority or another authority designated. Here, Chrisha did not serve TL through official channels, but instead used a competent person of Hong Kong.[2]

The fact that there is no objection in Hong Kong to the part of Article 10(c) relied upon by Chrisha is clearly supported by the case law throughout this country. The above type of declaration by its own terms applies only to documents sent for service through "official channels", and not where the plaintiff forewent official channels by forwarding the papers directly to a private process server in the country of service. *See Koehler v. Dodwell*, 152 F.3d 304, 307 (4th Cir. 1998) (holding that service by a private process server in Bermuda complied with that part of Article 10(c) regarding service by a person interested in a judicial proceeding through a competent person of Bermuda, where the United Kingdom on behalf of Bermuda also declared "documents sent for service through official channels will be accepted by the designated authority and only from judicial, consular or diplomatic officers of other Contracting

[2] Likewise, TL's statement that the use of Article 10(c) for service of process, as described above, would also render China's objection to Article 8 pointless is irrelevant. Article 8 deals solely with service of judicial documents through diplomatic or consular agents, and has no connection with service of documents through a private agent, such as a law firm. 20 U.S.T. 361, Article 8.

States."); *In re American International Group, Inc.*, 2007 U.S. Dist. LEXIS 15624 at *5 (S.D.N.Y. 2007) (annexed hereto as appendix "1") (holding that the declaration only applies to documents sent through "official channels" and, therefore, service was proper under Article 10(c) where defendant was personally served by process servers who constituted "other competent persons"); *IM Partners v. Debit Direct Limited*, 394 F. Supp. 2d 503, 512 (D. Conn. 2005) ("American courts have consistently interpreted this declaration not as an categorical objection to Article 10, but only as an objection regarding 'documents sent for service through official channels,' which have been defined as 'documents from an embassy or consular official."). The declaration is not an objection, but is "meant to be a clarification that any documents for service *through official channels* will be accepted only by the central or additional authority." *White v. Ratcliffe*, 285 Ill. App. 3d 758, 767, 674 N.E.2d 906, 913 (Ill. Ct. App. 1996). The declaration "does not disturb that portion of article 10(c) which permits the use of 'other competent persons,' such as private process servers, to effect service of process without the aid of the . . . government." *Id.* The "service through official channels" declaration does not preclude direct service through a solicitor, but was only intended to apply to documents from an embassy or consular official. *See Balcom v. Hiller*, 46 Cal. App. 4th 1758, 1765, 54 Cal. Rptr. 2d 536, 540 (Cal. Ct. App. 1996) ("[D]eclaration merely identifies the individuals to be used if a person wishes to serve documents through *official* channels; it does not address service through "other competent persons of the State of destination."); *Tax Lease Underwriters, Inc. v. Blackwall Green, Ltd.*, 106 F.R.D. 595, 596 (E.D. Mo. 1985).

A case cited by TL in its opposition papers even makes this distinction. In *Kadota v. Hogosai*, 125 Ariz. 131, 136, 608 P.2d 68 (Ariz. Ct. App. 1980), a case dealing with service in Japan under the Hague Convention, the court found that Japan objected to all of the methods of

service under Article 10(c) where Japan stated "'It is declared that the Government of Japan objects to the use of the methods of service referred to in subparagraphs (b) and (c) of Article 10.'" This type of all encompassing objection is not found in the declaration by China on behalf of Hong Kong.

Moreover, in November 2003, the Permanent Bureau of the Hague Conference prepared a questionnaire on the use and operation of the Hague Convention and sent it to each Contracting State, including Hong Kong, for its responses. *See Questionnaire Accompanying the Provisional Version of the New Practical Handbook on Operation of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters*, (attached hereto as Appendix "2"). The questionnaire specifically asks in question number 11, "Alternative Transmission Channels", about the use and operation of Articles 10(b) and 10(c) of the Hague Convention. Hong Kong's responses further confirm that the service performed by Chrisha herein was proper. Hong Kong responded that "Direct service through Government officials are not available in Hong Kong. However, a private agent (usually a firm of solicitors) may be appointed directly to effect service. Such service can be effected directly without going through the Government or the judiciary." *Response of the Hong Kong Special Administrative Region of the People's Republic of China to the Questionnaire on the Hague Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters*, at 11.3(a) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "6"). Hong Kong also responded that it has not encountered any difficulty with respect to the interpretation and application of the provision relating to interested persons under Article 10(c). *See Id.* at 11.4. These responses clearly explain that the declaration made by China on Hong Kong's behalf is limited solely to documents sent for service through official

channels.[3] It is correct that documents for service through official channels cannot be accepted by government officials, but, instead, must go through the Central Authority. However, it is clear that other competent persons of Hong Kong, such as a firm of solicitors acting as a private agent, may effect service of process in Hong Kong under Article 10(c) of the Hague Convention where the litigant chooses not to serve process through official channels. This is the precise method of service utilized by Chrisha here.

Hong Kong's responses to the questionnaire further confirm this fact under question 11.3(e), where Hong Kong is asked "Are your country's lawyers or solicitors authorized to perform service from abroad?" Hong Kong responded "Nothing in the law of Hong Kong prevents solicitors in Hong Kong from being appointed as agent to serve foreign process." *See Id.* at 11.3(e).[4]

Here, there is no dispute that the service of the summons and complaint was performed by a competent person in Hong Kong, the state of destination, as set forth under Article 10(c) in the Hague Convention. Wilkinson & Grist, Hong Kong counsel for Chrisha, completed service on TL on January 16, 2007 by having Poon Ming Hang, the service clerk for Wilkinson & Grist, serve TL with a sealed copy of the Summons and Complaint, together with a January 16, 2007 letter, by delivering and leaving such documents at the address of the registered office of TL, located at 13/F., Portion A, Peninsula Center, 67 Mody Road, Tsimshatsui, Kowloon, Hong Kong. *See* Affirmation of Poon Ming Hang, Exhibit C to Chrisha's moving papers. As such,

[3] Moreover, the declaration by China is from 1997 while Hong Kong's responses to the questionnaire are from 2003.

[4] The cases cited by TL are clearly not relevant with respect to a discussion on Article 10(c). Neither of the two cases cited by TL in support of an objection to Article 10(c) discuss what the declaration by China means with respect to service of process under Article 10(c) and, in fact, both cases deal solely with service of process under Article 10(a) of the Hague Convention. *See Denlinger v. Chinadotcom Corp.*, 110 Cal. App. 4th 1396, 1405, 2 Cal. Rptr. 3d 530, 538 (Cal. Ct. App. 2003); *Dagen v. CFC Group Holdings, Ltd.*, 2002 U.S. Dist. LEXIS 25767 at *46 (S.D.N.Y. 2002) (annexed to appendix of TL's opposition).

service was effected upon TL at TL's registered office in Hong Kong in compliance with Article 10 (c) of the Hague Convention.[5]

**B. Chrisha Also Properly Served TL With The Complaint Under Article 19 Of The Hague Convention By Serving TL Pursuant To Hong Kong Law**

Since service was properly made by Chrisha under Article 10(c) of the Hague Convention, this Court need not determine whether service was also proper under Article 19 of the Hague Convention. In any event, Chrisha also demonstrates here that its method of serving TL was proper under Article 19 of the Hague Convention.

TL's other argument regarding service of process is that Chrisha did not properly serve TL under Article 19 because service was not made pursuant to Hong Kong law, and specifically, under Order 69 of the Rules of the High Court (Chapter 4A of the Laws of Hong Kong). (A copy of Order 69 is attached to the appendix of TL's opposition). However, Chrisha's service of the summons and complaint on TL clearly complied with Hong Kong law and, therefore, was proper under Article 19 of the Hague Convention.

Service by Chrisha was properly performed under Order 65, rule 3, of the Rules of the High Court (Chapter 4A of the Laws of Hong Kong) and section 356 of the Companies Ordinance (Chapter 32 of the Laws of Hong Kong), the enactments providing for the manner of

---

[5] Likewise, this also explains why service of process was proper under Article 19 of the Hague Convention. Had service in Hong Kong only be permitted through the Central Authority, as TL contends, there would be an objection to Article 19 of the Hague Convention in the declaration by China. Instead, there is no such objection, which is consistent with the validity of service under the part of Article 10(c) of the Hague Convention discussed above.

Article 19 of the Hague Convention provides that:

> To the extent that the internal law of a contracting State permits methods of transmission, other than those provided for in the preceding articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

20 U.S.T. 361, Article 19.

service of documents on corporate bodies. (Copies of Order 65 and Section 356 are attached to the appendix of TL's opposition). TL does not dispute that Chrisha complied with these statutes. Instead, it argues that Chrisha did not comply with Order 69 of the Rules of the High Court. However, Chrisha was not required to comply with Order 69 of the Rules of the High Court.

Order 69, rule 3(2), of the Rules of the High Court only applies to service of process on a person and specifically provides that when serving process on corporations, Order 69 is subject to "any enactment providing for the manner of service of documents on corporate bodies". As such, these other enactments (providing for the manner of service of documents on corporate bodies) take precedence over the procedure for service of process on a person in Order 69. The enactments providing for the manner of service of documents on corporate bodies are Order 65, rule 3, of the Rules of the High Court and section 356 of the Companies Ordinance. Neither of these two rules requires that the process server for service on a corporation under the statutes be the Chief Bailiff. TL fails to explain how and why the Chief Bailiff would be required to serve process under Order 65 and Companies Ordinance section 356. In fact, Hong Kong sets forth that the Chief Bailiff only serves process on instruction from the court.[6] *See Response of the Hong Kong Special Administrative Region of the People's Republic of China to the Questionnaire on the Hague Convention on the Service Abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters*, at 11.3(b) and (d). Chrisha, however, did not serve process through the court and there is no requirement that it do so. In sum, there is no requirement under Article 19 of the Hague Convention, or Order 65 and Companies Ordinance

[6] Furthermore, TL's argument that service was defective under Order 7 fails. The summons issued by this Court is an "original process", and not an "originating summons" under Order 7. As such, Order 7 has no application herein.

section 356, that service of process was required to be performed through a court or by the Chief Bailiff.[7]

It is important to note here that Article 10(c) does not require, as does Article 19, that service must be performed pursuant to applicable Hong Kong law for service of documents coming from abroad. Thus, Order 69 of the Rules of the High Court clearly does not apply to service effectuated under Article 10(c) of the Hague Convention. Under Article 10(c), personal service by counsel in Hong Kong is effective service of process. See *Kadota v. Hogosai*, 125 Ariz. 131, 136, 608 P.2d 68, 73 (Ariz. Ct. App. 1980) (holding that personal service by a Japanese attorney in Japan would have been effective service of process under Article 10(c) of the Hague Convention if Japan did not clearly object to the methods of service under Article 10(c)). Article 10(c) specifically provides that service can be performed by "other competent persons of the State of destination". 20 U.S.T. 361, Article 10(c). "[W]e construe the phrase "other competent persons of the State of destination" to include those individuals who serve process in a manner authorized by the domestic law" of the country. *Balcom v. Hiller*, 46 Cal. App. 4th 1758, 1765, 54 Cal. Rptr. 2d 536, 540 (Cal. Ct. App. 1996). There is no limitation under the domestic law of Hong Kong that service of process must be performed by the Chief Bailiff. Therefore, even if this Court finds service was improper under Article 19 of the Hague Convention because service was not made by the Chief Bailiff, which it should not find, service is still clearly proper under Article 10(c) of the Hague Convention.

Therefore, as demonstrated above, Chrisha properly served TL with the summons and complaint in this action under the law of Hong Kong, as permitted by the Hague Convention and,

[7] There is also no requirement under Article 10(c) that service of process be performed by the Chief Bailiff on instruction from the court.

accordingly, Chrisha's service upon TL in this action is valid under Federal Rule of Civil Procedure 4.

**C. <u>TL's Actual Notice Of This Action Is Sufficient Service Of Process</u>**

Moreover, even if Chrisha's service was technically noncompliant -- which it clearly is not – this Court can and should declare the service valid since TL received *actual notice* of this action, which TL has so admitted. The majority of courts discussing the issue have held that actual notice of the suit, together with a good faith effort to comply with the Hague Convention, is sufficient service of process. *See, e.g., Overseas Food Trading, Ltd. v. Agro Aceitunera S.A.*, 2007 U.S. Dist. LEXIS 954 at *7-9 (D.N.J. 2007) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "11") (denying defendant's motion to dismiss based on insufficiency of process because plaintiff made a good faith effort to serve process upon defendant and defendant received actual notice of the suit); *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301-302 (2d Cir. 2005) ("Viertel does not dispute having received the complaint in this action, so . . . there is no prejudice to him."); *Greene v. Le Dorze*, 1998 U.S. Dist. LEXIS 4093 at *9 (N.D. Tex. 1998) (attached hereto as Appendix "3") ("As a practical matter, where a plaintiff has attempted in good faith to comply with the Hague Convention, and where a defendant received sufficient notice despite the technical defect, it is within a court's discretion to declare service properly perfected."); *Fox v. Regie Nationale Des Usines Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984) ("Rule 4 stresses actual notice, rather than strict formalism. There is no indication from the language of the Hague Convention that it was intended to supercede this general and flexible scheme, particularly where no injustice or prejudice is likely to result to the party located abroad, or to the interests of the affected signatory country."). Even a case cited by TL makes this point. *See Seiko Epson Corporation v. Glory South Software Manufacturing, Inc.*, 2007 U.S. Dist. LEXIS 6250 at *5 (D. Or. 2007) ("[C]ourts have held service of process to be

adequate if, after a good faith but unsuccessful attempt to comply with the Hague Convention, the party to be served had sufficient notice of the action that no injustice would result.").

TL does not dispute that it was aware of this action from its onset, that it received actual notice of the lawsuit and that, at the very least, Chrisha has made a good faith effort to comply with the Hague Convention. Furthermore, TL acknowledged receipt of the summons and complaint at the time of Chrisha's service of the documents on TL in Hong Kong by affixing its "company chop" on a copy of the documents kept by Chrisha's local counsel. *See* Proof of Service, Exhibit C to Chrisha's moving papers.

Indeed, TL's actual notice of this action, coupled with Chrisha's personal service of the summons and complaint at TL's registered office in Hong Kong, certainly comports with the constitutional requirement that notice be "reasonably calculated . . . to apprise interested parties of the pendency of the action." *Silver Top Ltd. v. Monterey Industries Ltd.*, 1995 U.S. Dist. LEXIS 1981 at *7 (S.D.N.Y. 1995) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "12") ("The Court finds that service by registered mail to Defendants' addresses as they appeared on file with the Registry was reasonably calculated to give notice under all of the circumstances and, therefore, was constitutionally valid."); *Burda Media*, 417 F.3d at 303. Certainly, if service by registered mail is reasonably calculated to apprise interested parties of an action, then personal service that was also acknowledged by TL absolutely complies with constitutional due process.

### D. Chinese Translation Is Not Required As English Is An Official Language of Hong Kong

Finally, TL argues that the summons and complaint, and/or an admonition of the consequences of failing to file an answer, have to be translated into Chinese. TL's argument is completely wrong. *See, e.g.*, *Lemme v. Wine of Japan Import, Inc.*, 631 F. Supp. 456, 464

(E.D.N.Y. 1986) ("the translation 'requirement' is triggered only when it is the Central Authority that serves the document" and "[t]he translation provision is actually not even mandatory"). English, together with Chinese, are the official languages of Hong Kong. *See* Section 3 of the Official Languages Ordinance (Chapter 5 of the Laws of Hong Kong), annexed hereto as Appendix "4"; U.S. Department of State Background Note: Hong Kong, annexed to Chrisha's opposition to TL's motion to set aside default as appendix "13".

Furthermore, TL's assertion that Hong Kong requires all pleadings served in Hong Kong to have, in Chinese, an admonition of the consequences of failing to file an answer is untrue. First, TL fails to set forth evidence that the summons and complaint are court forms to which Hong Kong Practice Direction 24.2 applies. Second, Hong Kong Practice Direction 24.2 states that it only applies to service on a party "who is likely to be Chinese-speaking and who may not be proficient in English." TL has set forth no evidence that its employees are not proficient in English.

## II. A CONSIDERATION OF THE FACTORS DEMONSTRATES THAT TL HAS NOT SHOWN GOOD CAUSE TO JUSTIFY SETTING ASIDE THE DEFAULT

TL fails to meet the "good cause" standard under Federal Rules of Civil Procedure 55(c) to set aside the default against it. Here, the factors clearly weigh against setting aside the default against TL and there is no doubt that a default judgment is now warranted against TL.

### A. TL's Default Was Willful And TL Has Failed to Demonstrate A Good Faith Basis For The Default

In support of its argument that its default was not willful, TL solely relies upon the case of *Westvaco Corporation v. Viva Magnetics Limited*, 2002 U.S. Dist. LEXIS 13449 (S.D.N.Y. 2002) (annexed to appendix of TL's opposition). However, the facts of *Westvaco Corporation* clearly distinguish its holding from this action, and furthermore, *Westvaco Corporation* does not

discuss any of the other factors that must be weighed by the Court in deciding whether there is good cause to vacate the default.

First, TL's assertion that the court in *Westvaco Corporation*, in denying plaintiff's default judgment motion, determined that the service of process therein was proper is false. The court made no such determination as to the propriety of service and, in fact, the plaintiff was arguing that its failure to comply with requirements of the Hague Convention did not justify the defendant's delay because the defendant was aware of the suit. *Id.* at *7. Therefore, TL cannot argue that that the court in *Westvaco Corporation* held that the plaintiff's motion for default judgment was denied even where service of process was found to be proper.

Second, and even more telling, several of the key facts surrounding service of process and the answering of the complaint are remarkably different. In *Westvaco Corporation*, defendant supported its argument that it had a good faith basis for concluding that it was not required to answer by presenting several written statements prepared by plaintiff, and received by defendant, indicating that service on defendant was "not yet complete". *Id.* More importantly, the court in *Westvaco Corporation* mainly relied upon the fact that the defendant answered the complaint just after its time had expired. The defendant filed its answer with the court the month after it received the complaint. It was contended that service was effective on February 7, 2001 and the defendant answered the complaint on March 29, 2001, less than two months later. The court found that this belied plaintiff's contention that the defendant had acted egregiously to evade the claims. *Id.* at *9. Here, TL has yet to even submit a proposed answer to the complaint in this action. Service on TL was performed on January 16, 2007, and now, almost four months later, TL has yet to answer the complaint. Therefore, the *Westvaco Corporation* case has no relevance to the facts herein.

Moreover, TL did not have a good faith basis for believing that it was not obligated to answer the complaint herein. Its belief that the summons and complaint were not properly served on TL is not a proper basis for TL to ignore this lawsuit when service was indeed proper. This was a tactical decision on TL's part and it cannot now be excused from such a purposeful decision. This Court should not relieve TL of the consequences of its improvident tactical decision. *See O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1403-04 (7th Cir. 1993); *United States of America v. Ponte*, 246 F. Supp. 2d 74, 80-81 (D. Me. 2003) (denying motion to set aside default where defendant contended that the default was a result of improper service of amended complaint); *Kumar v. Ford*, 111 F.R.D. 34, 39 (S.D.N.Y. 1986) (finding that defendant's failure to respond was willful where defendant made a deliberate choice to rely on ineffective service, which was a tactical decision that constitutes neither mistake nor excusable neglect).

In *O'Brien*, the court upheld the default against defendant and found that the court was not compelled to relieve the defendant of the consequences of its improvident tactical decision where, in reliance on its belief that the lawsuit had not been served, the defendant did not respond to the complaint, as opposed to filing a motion to determine whether it actually had been served. The defendant argued that "Why would any person who knows of the existence of a lawsuit, but honestly . . . believes itself not to be served go before the court to challenge service?" The court in response stated that "The answer is this – if it turns out that the person's belief is incorrect and proper service has been obtained, he or she may end up in default." 998 F.2d at 1403.

If TL believed that the summons and complaint were improperly served, it should have timely proceeded with a motion to dismiss against Chrisha under Federal Rules of Civil

Procedure 12(b)(5) or filed an answer and raised improper service as a defense. Instead, TL willfully did not respond to the summons and complaint by Chrisha and commenced an action in the Southern District of New York.[8] TL chose to do nothing and hoped that this Rhode Island action would "go away" in favor of the action filed by TL against Chrisha in New York. TL has failed to show that its default herein was not willful and has not set forth a valid explanation for its default. TL was admittedly aware of this lawsuit, and in receipt of a copy of this lawsuit, even before it was properly served on TL on January 16, 2007.[9] TL cannot now rely on improper service of the complaint as a valid reason for its failure to respond to the complaint, as the service of the summons and complaint on TL in this action was proper. TL must suffer the consequences of its tactical decision to ignore the proceedings in this Court.

**B. <u>Prejudice To Chrisha</u>**

Despite TL's assertions to the contrary, Chrisha would be prejudiced if the Court sets aside the default against TL. TL argues that Chrisha's sole argument regarding prejudice is delay alone, and not its accompanying dangers.[10] However, TL is mistaken. Chrisha continues to suffer increased damages as long as this action remains unresolved. Chrisha is seeking an expedited resolution of this dispute for several reasons, including (1) the significant costs it has been incurring as a result of storing many of the defective goods since its timely and proper

---

[8] This was an obvious forum-shopping tactic by TL, as it knew about this action and admitted such in the New York action.

[9] In fact, after learning of this lawsuit, counsel for TL contacted counsel for Chrisha and the parties engaged in unsuccessful settlement negotiations on December 27, 2006. *See* Butera Declaration at ¶ 3, attached to Chrisha's opposition to TL's motion to set aside default. Moreover, TL does not deny that the summons and complaint in this action were served on TL on January 16, 2007. TL acknowledged receipt of the summons and complaint by affixing its "company chop" on a copy of the documents kept by Chrisha. *See* Proof of Service, Exhibit C to Chrisha's moving papers. Instead, TL argues that such service of the summons and complaint on TL was "technically" not proper.

[10] Delay alone can also constitute sufficient prejudice in certain circumstances. *See Jeri-Jo Knitwear, Inc. v. E.S. Sutton, Inc.*, 1995 U.S. Dist. LEXIS 18035 at *6 (S.D.N.Y. 1995) (annexed hereto as appendix "5") (holding plaintiff would be prejudiced by the unnecessary delay and needless litigation where the defendant lacks any defense to the action).

rejection of the goods purchased from TL and (2) Chrisha's current and future business relations with its customers are being jeopardized due to Chrisha's customers requesting large reimbursement and damages from Chrisha in 2006 for the defective goods and refusing to do business with Chrisha in 2007. *See* Affidavit of William Machala, sworn to on April 9, 2007, at ¶ 9, attached to moving papers. This type of prejudice has been found to be sufficient. *See Sun Life Assurance Co. of Canada v. Conroy*, 2006 U.S. Dist. LEXIS 11773 at *13 (D.R.I. 2006) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "1") (finding that vacating default would prejudice one of the co-defendants as she had been seeking an expeditious resolution of the dispute over the right to funds and granting the motion to vacate would further delay resolution of the dispute). Therefore, removal of the default would clearly prejudice Chrisha.

Furthermore, even if this Court finds no prejudice to Chrisha, TL does not dispute that "a default judgment may stand even where there has been no showing of substantial prejudice to the party benefiting from the default. A district court simply may insist upon compliance with its local rules." *United States v. The Proceeds of Sale of 3,888 Pounds of Atlantic Sea Scallops*, 857 F.2d 46, 49 (1st Cir. 1988). *See also Sun Life Assurance Co. of Canada v. Conroy*, 2006 U.S. Dist. LEXIS 11773 at *14; *Sir Charles 2X v. District of Columbia*, 1990 U.S. Dist. LEXIS 16731 at *13 (D. Col. 1990) (annexed hereto as appendix "6") (holding the factor of willfulness "far outweighs the lack of prejudice to the plaintiff and warrants entry of judgment by default.").

TL also misleads the Court regarding Chrisha's actions regarding the service of the complaint. The reason that Chrisha waited until January 2007 to serve the complaint was the settlement negotiations entered into between the parties in December 2007. *See* Butera Declaration at ¶ 3. Furthermore, at the settlement meeting, counsel for Chrisha requested that

counsel for TL accept service of the lawsuit and to get back to Chrisha's counsel with its decision. After it was apparent that the settlement negotiations would not resolve this matter, and that counsel for TL had no intention of letting Chrisha know whether it would accept service, Chrisha proceeded to immediately take the necessary steps to effect service on TL. *See* Butera Declaration at ¶¶ 3 and 4. Thus, the only delay in this proceeding has been TL's purposeful avoidance of these proceedings.

**C. <u>TL Has Not Set Forth A Meritorious Defense</u>**

TL has also failed to sufficiently set forth a meritorious defense to this action. TL has the burden of demonstrating a meritorious defense and must set out its alleged meritorious defense with the "required specificity". *See American Metals Service Export Co. v. Ahrens Aircraft, Inc.*, 666 F.2d 718, 720-21 (1st Cir. 1981). Defendant must set forth "'a sufficient elaboration of facts to permit the trial court to judge whether the defense, if movant's version were believed, would be meritorious.'" *American Metals Service Export Co.*, 666 F.2d at 721 (citing and adopting the specificity test set forth by the 10th Circuit Court of Appeals in *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978)). "[M]ore than mere legal conclusions, general denials or simple assertions that the movant has a meritorious defense" are required to succeed in demonstrating a meritorious defense. *In re Stone*, 588 F.2d at 1319. *See also Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 252 (4th Cir. 1967) ("[D]efendant did no more than state that plaintiff breached the contract, a mere conclusion which fell far short of providing the court with a satisfactory explanation of the merits of the defense.").

TL does nothing more than state mere legal conclusions and simple assertions without the required specificity and elaboration so that this Court can determine whether TL has a meritorious defense. TL sets forth mere legal conclusions that "Chrisha failed to reject the products in a timely manner and, as a consequence, deprived TL Toys of an opportunity to cure

the alleged defects, as is required under controlling law." *See* TL's Memorandum of Law, p. 18. Such mere unsupported legal conclusions do not meet the required standard of factual specificity to demonstrate a meritorious defense mandated by this Circuit. *See American Metals Service Export Co.*, 666 F.2d at 721; *In re Stone*, 588 F.2d at 1319; *Federal Deposit Ins. Corp. v. Myerson*, 1992 U.S. App. LEXIS 28631 at *8 (9th Cir. 1992) (annexed to Chrisha's opposition to TL's motion to set aside default as appendix "2") (quoting *Cassidy v. Tenorio*, 856 F.2d 1412, 1416 (9th Cir. 1988)) (holding that mere legal conclusions cannot support a decision to vacate entry of default).

**D. <u>TL Has Not Acted In Good Faith</u>**

Likewise, TL has failed to establish that it acted in good faith. TL argues that the reason it did not respond to the complaint was that Chrisha's service on TL was improper and that TL notified Chrisha of this fact repeatedly. However, the letters referenced by TL are dated well before TL was served with the summons and complaint in this action. *See* December 14, 2006 and December 21, 2006 letters annexed as Exhibits 1 and 2 to TL's opposition. Furthermore, the letters do not discuss that TL will not be responding to the complaint in this action because of its belief of improper service. Indeed, rather than raise its alleged technical defect regarding service in response to this action, TL simply ignored this action and filed its own action more than three months after Chrisha's action was filed in this Court and at least two months after TL had knowledge of this action. This was an obvious forum-shopping tactic by TL, as it knew about this action and admitted such in the New York action. TL then waited until Chrisha filed this motion for a default judgment before even filing its motion to set aside the default in this action.

TL's filing of an action in New York will result in the waste of both the resources and time of the parties. If TL wished to contest whether the service of process in this action was proper and whether this court has personal jurisdiction, it should have made such a challenge in

this first-filed action in Rhode Island, and not in New York. TL admits that, prior to its motion to set aside the default, it only made its argument against Chrisha's service of process of the complaint in this action to the court in the New York action. Therefore, TL does not exhibit the good faith necessary to justify the court's removing of the default.

### E. The Amount Of Money At Issue Cannot Alone Prevent A Decision In Chrisha's Favor

As detailed in the section below, Chrisha has set forth an amount certain for judgment in its favor in this action. While the monetary amount at issue is significant, that alone cannot be the basis for a denial of a motion for default judgment. *See Howard Johnson International, Inc. v. Wang*, 7 F. Supp. 2d 336, 341 (S.D.N.Y. 1998) (holding that, while there was a significant monetary judgment in the amount of $194,777.09, "[t]he interests of finality and fairness, however, weigh against reopening the judgment, particularly here, where defendant had effective, actual notice of the lawsuit but merely chose not to defend the suit without offering any credible explanation."). If anything, the amount of money involved herein is another reason why TL should have timely responded to the complaint in this action.

### F. TL's Motion To Set Aside The Default Was Not Timely Under The Circumstances

TL did not act timely with respect to moving to vacate the default when it is considered that TL knew of this action since December 2006. The default was entered by the Clerk of the Court on March 7, 2007, but TL did not move to set aside the default until April 11, 2007, more than one month later. TL admits these facts, and argues that it did not move to vacate the default until it received this motion for a default judgment by Chrisha.[11] However, this only supports that it was a tactical decision by TL to not respond to the complaint in this action. TL basically

[11] TL knew about this action since December 2006 and admits that its counsel performs a periodic checking of the electronic docket (Pacer).

admits that it only first appeared in this action when there was a threat of having a money judgment by default entered against it.

Furthermore, the case cited by TL, *Wainwright's Vacations, LLC v. Pan Am Airways Corp.*, 130 F. Supp. 2d 712 (D. Md. 2001), only ruled that a period of just over one month was reasonable under the circumstances of that case. There, the court found that the defendant acted promptly where it had difficulty in obtaining counsel for representation. *Id.* at 718. Here, by contrast, TL already had counsel representing it with respect to the issues in this action since at least December 2006.

As outlined in the sections above, a clear majority of the factors point to the Court denying TL's motion to set aside the default. TL's default was willful, TL failed to establish a meritorious defense, TL did not act in good faith, TL failed to provide the Court with a sufficient explanation for its default and TL's motion to set aside the default was untimely under the circumstances. Furthermore, the removal of the default would prejudice Chrisha. Therefore, TL has failed to demonstrate good cause to justify vacating the default and the Court should deny TL's motion to set aside the default against it in this action and grant Chrisha's motion for a default judgment.

## III. CHRISHA'S FACTUAL ALLEGATIONS ARE TAKEN AS TRUE AND CHRISHA'S DAMAGES ARE PROPERLY SUPPORTED

Chrisha's factual allegations against TL in this action do not need to be supported by "proofs", as argued by TL. There is no requirement that Chrisha has to provide the Court with all of the contracts referenced in the allegations of the complaint when TL has defaulted. In fact, TL sets forth no case law in support of this argument. Instead, a party who defaults is taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability. *Banco Balboa v. Family Rests. Inc.*, 285 F.3d 111, 114 (1st Cir. 2002). "…[T]here is

no question that…the allegations of fact [in the complaint] must be taken as true and each of the claims…[in the complaint] must be considered established as a matter of law." *Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 13 (1st Cir. 1985). "[I]t is precisely the right to contest liability that a party gives up when it declines to participate in the judicial process." *Banco Balboa v. Family Rests. Inc.*, 285 F.3d at 114. Thus, due to TL's default in this action, Chrisha's well-pleaded allegations of fact against TL are taken as true and Chrisha's claims for relief in the complaint are considered established as a matter of law. *See also Katahdin Paper Company LLC v. U & R Systems Inc.*, 231 F.R.D. 110, 111 (D. Me. 2005) (quoting *Libertad v. Sanchez,* 215 F.3d 206, 208 (1st Cir. 2000)); *Wells Fargo v. Ovalles*, 2005 U.S. Dist. LEXIS 29042 at * 2 (D.R.I. 2005) (annexed hereto as appendix "7"). As outlined in Chrisha's moving papers, Chrisha has set forth sufficient allegations of fact in its complaint to support a judgment in favor of Chrisha in this action.

Furthermore, Chrisha does not dispute that the law provides that if it is necessary to take an account or to determine the amount of damages, the Court may conduct such hearings as are necessary. *See e.g. Katahdin Paper Company LLC v. U & R Systems Inc.*, 231 F.R.D. at 114; *Banco Balboa v. Family Rests. Inc.*, 285 F.3d at 114 ("A hearing may be required, however, to set damages when the amount is in dispute or is not ascertainable from the pleadings."). However, Chrisha believes that the evidence submitted by way of the affidavit of William Machala, and its accompanying exhibits, submitted with Chrisha's moving papers, provides this Court with sufficient evidence upon which to make a determination as to damages. The full extent and detail of damages suffered by Chrisha as a result of TL's breach of contract is contained in the affidavit of William Machala and the exhibits attached thereto.[12]

[12] In addition, as set forth in the affidavit of William Machala, the damages are in excess of the purchase price of the contracts between Chrisha and TL as a result of TL's failure to meet the terms and conditions of the contracts. The

In *Katahdin Paper Company LLC v. U & R Systems Inc.*, the court found similar evidence to be more than sufficient in deciding the amount of damages. The court relied upon two affidavits of the plaintiff's employees and attached documentation, including damage calculations, in granting plaintiff's motion for default judgment and awarding damages in the amount of almost $500,000. 231 F.R.D. at 113-14. *See also Brockton Savings Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d at 13; *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983) (holding that hearing unnecessary where "the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits."); *Hasbro, Inc. v. Chang*, 2006 U.S. Dist. LEXIS 35529 at *7 (D.R.I. 2006) (annexed hereto as appendix "8") (awarding $400,000 and finding that "the Court of Appeals for the First Circuit has also indicated that in limited circumstances district courts may dispense with a Fed. Rule Civ. P. 52(b)(2) hearing, even in the face of apparently unliquidated claims.").

Therefore, Chrisha has sufficiently set forth its entitlement to damages in the amount of $10,776,835. In the alternative, if the Court determines that a hearing as to damages is necessary, Chrisha will appear and present further evidence as to its damages.

---

untimely delivery of defective products by TL caused various injuries, including lost profits, refunds and payment of damages by Chrisha to its customers, additional freight and shipping charges, additional warehouse costs and lost business. *See* Machala Affidavit at ¶ 9.

## CONCLUSION

For all the foregoing reasons, plaintiff Chrisha's motion for a default judgment in the amount of $10,776,835.00, and for judgment declaring that it properly rejected the goods and does not owe TL any monies under the contracts, should be granted and defendant TL's motion to set aside the default should be denied in its entirety, and the Court should grant such other and further relief as it may deem just, proper and equitable under the circumstances.

/s/Thomas C. Plunkett
Thomas C. Plunkett #1662
KIERNAN, PLUNKETT & REDIHAN
91 Friendship Street
Providence, RI 02903
(401) 831-2900 - Tel
(401) 331-7123 - Fax
e-mail: tplunkett@kprlaw.com

/s/Stephen J. Smirti, Jr.
Stephen J. Smirti, Jr.
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000 - Tel
(516) 357-3333 – Fax
e-mail: stephen.smirti@rivkin.com

/s/Celeste M. Butera
Celeste M. Butera
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000 - Tel
(516) 357-3333 – Fax
e-mail: celeste.butera@rivkin.com

/s/Jason B. Gurdus
Jason B. Gurdus
RIVKIN RADLER LLP
926 RexCorp Plaza
Uniondale, New York 11556-0926
(516) 357-3000 - Tel
(516) 357-3333 – Fax
e-mail: jason.gurdus@rivkin.com

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

SUMMARY OF THE ARGUMENT ........ 1

ARGUMENT ........ 1

I. SERVICE ON TL TOYS WAS PROPER UNDER THE FEDERAL RULES, THE HAGUE CONVENTION AND HONG KONG LAW ........ 1

A. Service Of Process Was Properly Performed By Means Authorized Under Article 10(c) Of The Hague Convention ........ 1

B. Chrisha Also Properly Served TL With The Complaint Under Article 19 Of The Hague Convention By Serving TL Pursuant To Hong Kong Law ........ 7

C. TL's Actual Notice Of This Action Is Sufficient Service Of Process ........ 10

D. Chinese Translation Is Not Required As English Is An Official Language of Hong Kong ........ 11

II. A CONSIDERATION OF THE FACTORS DEMONSTRATES THAT TL HAS NOT SHOWN GOOD CAUSE TO JUSTIFY SETTING ASIDE THE DEFAULT ........ 12

A. TL's Default Was Willful And TL Has Failed to Demonstrate A Good Faith Basis For The Default ........ 12

B. Prejudice To Chrisha ........ 15

C. TL Has Not Set Forth A Meritorious Defense ........ 17

D. TL Has Not Acted In Good Faith ........ 18

E. The Amount Of Money At Issue Cannot Alone Prevent A Decision In Chrisha's Favor ........ 19

F. TL's Motion To Set Aside The Default Was Not Timely Under The Circumstances ........ 19

III. CHRISHA'S FACTUAL ALLEGATIONS ARE TAKEN AS TRUE AND CHRISHA'S DAMAGES ARE PROPERLY SUPPORTED ........ 20

CONCLUSION ........ 23